## J. M. SUBLETT v. S. G. BEDWELL.

1. CONTESTED ELECTIONS—JUSTICE OF THE PEACE.—A justice of the peace, when acting upon a case of contested election under § 391 of the Code of 1871, is not exercising the jurisdiction conferred by section 23 of article VI of the constitution; but in such case his attitude is more analogous to that which he is authorized to hold under a writ of *ad quod damnum.* Brown v. Beatty, 34 Miss. 243.

2. SAME—POWER OF JURY.—The duties of the jury in such case are not restricted to a mere count of the votes, but must ascertain if the ballot-boxes have been tampered with; if legal votes were rejected, or illegal votes received; if fraud, violence or intimidation

*Supra,* p. ——.

Statement of the case.

have been employed at the polls; and to what extent, if any, such causes have affected the result.

3. SAME—APPEAL TO CIRCUIT COURT.—It is error for the circuit court, on appeal from a contested election case before a justice of the peace, to dismiss the case for want of jurisdiction in the original triers; but the court should proceed to try the cause *de novo*, on its merits.

4. DISQUALIFICATIONS FOR OFFICE.—If the candidate receiving the highest number of votes be under personal disability or disqualification, it does not follow that the one receiving the next highest vote shall take the office; but there being, by implication, a negation of the minority candidate, and the majority candidate being ineligible, the utmost that can be said is that there has been no election;—except in those cases covered by the last section of the schedule to the constitution (article xiii, § 15), which was only intended to exclude participants in the rebellion, and must be limited to that object.

5. REMOVAL OF POLITICAL DISABILITIES.—If a person disqualified by the 14th amendment of U. S. constitution be elected to office, and the disqualification be removed before the term begins, the practice has been to let him take the office. *Obiter dictum.**

6. CASE AT BAR.—Disqualified candidate having received the highest vote, the office is refused to the minority candidate, and the election held void, and the office vacant, *de jure*.

7. SAME.—The majority candidate having been a registrar of voters preparatory to the election at which he was a candidate and elected, was thereby disqualified and his election void.

8. QUO WARRANTO NOT THE REMEDY IN SUCH CASES.—*Quo warranto* may be brought to inquire by what authority an incumbent *holds* an office; but not to decide between claimants before the term has commenced.

ERROR to the circuit court of Yazoo county. CUN-NINGHAM, J.

The opinion of the court contains a sufficient statement of the case.

The following errors are assigned:

1. The court ererd in granting the motion to defendant in error to set the case specially in advance of others numerically prior on the docket.

2. The court erred in granting the motion to try the case in advance and in preference to other cases then ready for trial and numerically prior to it on the docket.

3. The court erred in sustaining the motion to dismiss the case for want of jurisdiction in the justice

*NOTE.—See Comm. v. Cluley, 56 Penn. St. R. 270; Brightly's Lead. Elec. Cases, 144 and note, p. 151.        REPORTER.

of the peace, and for this cause reversing the verdict of the jury at the costs of plaintiff in error.

*R. S. Hudson, W. H. Luse, R. Bowman* and *J. A. P. Campbell,* for plaintiff in error.

*Garnett Andrews, Jr.,* for defendant in error.

SIMRALL, J.:

J. M. Sublett initiated, before a justice of the peace of Yazoo county, a contestation of the election of S. G. Bedwell to the office of chancery clerk of that county. A trial was had before a jury, which resulted in a verdict in favor of Sublett; thereupon the justice gave to Sublett the certificate required by sec. 391, Code of 1871. Bedwell appealed to the circuit court. In that court, after a good deal of testimony had been adduced, on Bedwell's motion, the verdict of the jury in the original trial was reversed and set aside, and the cause dismissed for want of jurisdiction in the justice of the peace. From that decision the case is brought to this court.

In support of the judgment of the circuit court, it is argued that under article 6, sec. 23, of the constitution, the jurisdiction of the justice of the peace is limited to pecuniary demands, when the principal of the amount does not exceed $150, and that it is therefore not competent for the legislature to confer upon him, civil cognizance, which would not be embraced in that limitation.

It is further contended that this case does not fall within the 24th section of the same article, because, the justice and jury are not an "inferior court" within the sense of that provision.

It was also urged, that the question of the "eligibility" of a candidate to the office is not a matter referred by the 391st section of the code, to the investigation and decision of the justice and jury;—and inas-

much as Sublett claimed the office, against Bedwell, on the ground that the latter was "ineligible," and disqualified to take the office, therefore, the justice and jury had no right to go into that investigation, and the verdict and certificate are *coram non judice.*

The last section of the article (4th) organizing the legislative department of the government, is, "the legislature shall provide for determining contested elections." The language is very comprehensive; it certainly in terms and reason, includes all elections by the people; it also refers it to the wisdom and discretion of the legislature, to make provision for the contestation. The mode and manner is left to the selection of that body. Quite surely, in exerting the power, they must not appoint a mode of trial which would conflict with prohibitory clauses of the constitution, or which would be antagonistic to the distribution of the powers of government into separate bodies of magistracy, or which would infringe the harmonious agreement of the several parts of the instrument with the scheme and purpose of the whole.

The duty is made imperative on the legislature to "provide by law for determining such" controversies. That was attempted to be performed by the 8th article of the Code, pp. 99, 100, for all elective officers, from the governor down to, and including district and county officers. For the latter the mode is, to file a petition before a justice of the peace, setting forth the grounds of contest, who shall issue a summons to the party whose election is contested; the justice shall cause an issue to be made up, and tried by a jury; the verdict shall specify the person having the greatest number of "legal votes," and to him the "justice shall give the certificate." Either party shall have the right to appeal to the circuit court; the trial is begun and had before the justice and jury, and may be reconsidered on its merits in the circuit court. The justice of the peace is part

of the machinery, but when acting in this sphere is not exercising jurisdiction under the 23d section of the 6th article of the constitution. His attitude is more analogous to that performed by him in making an inquisition of damages, or assessing the value of private property taken for public use, as in Brown v. Beatty, 34 Miss. 243.

The constitution prohibits the appropriation of private property for public use, except compensation be first made. The practice is old, and quite well established, that where public necessity demands that the citizen shall yield up a part of his land, for a wharf in a town or city, for a railroad or other public highway, or other general use, that its value may be ascertained as it was in Brown v. Beatty, and that the subject may be reopened in the circuit court on appeal. Nor have the objections prevailed that have been so strenuously urged here.

The reasoning pressed upon us has been employed against the justice of the peace presiding over the trial of the writ of forcible entry and detainer, to the probate judge alone, or in conjunction with two justices of the peace, setting in the county court etc. etc., Rule v. Fyen, 10 S. & M. 446; 5 How. 20; 7 How. 543; 34 Miss. 243 *supra*, but the argument has never prevailed. Whether the justice of the peace and jury be regarded (*pro hac vice*) as an inferior court, or whether they are considered of the nature of inquisition (*quasi judiciæ*) to re-examine the returns, and determine which person has received the greatest number of legal votes, and is entitled to the office, is not material. In either view, it was competent for the legislature to provide that mode for the determination of the controversy. It is not denied that the legislature might have committed the trial in the first instance to the circuit court. If the proposition were true, that the circuit court could not take cognizance of the appeal, as maintained by the de-

fendant in error, then that court exceeded its authority in "reversing" the verdict of the jury. Its power would be exhausted by a dismissal of the appeal for that reason.

It is further contended that Sublett's petition did not suggest such an issue as could be tried by the jury, because he claimed the office on account of the disqualification of Bedwell. The allegation in the petition is, that he (Sublett), as he is advised and believes, " obtained the highest number of legal votes," and that his opponent makes " the same claim;" that Bedwell is disqualified because he was a registrar, and so acted, etc., etc. A casual reading of the statute (§ 391) would give countenance to the idea that nothing more was referred to the jury, than the query: which candidate received the greatest number of legal votes? But an interpretation so narrow would fall short of the object. The legislature proposed that the contestation of " right " to the office shoud be raised and determined, if practicable, before the term of office began. Hence the petition must be filed within twenty days after the election. In the response which the jury is required to make, more may be involved than a mere count of the votes. They might ascertain if the boxes containing the ballots had been tampered with; whether legal votes had been rejected and illegal ones received; whether fraud, intimidation and violence had been employed at the polls, and to what extent, and with what effect upon the result. Quite certainly the plaintiff, petitioner, who claims the office, must show that he has been elected by the people and is entitled to the office. He asserts that to be the fact, and assumes the affirmative of the proof. *Prima facie*, Bedwell has been elected, since he has the certificate of the fact from the registrars or inspectors. Sublett undertakes to show that this *prima facie* claim is not true, and upon a re-investigation before the jury, he will so make it appear, and demonstrate his election

and right to the office. We think that the allegations
in the petition bring the case within the statute, and
the justice and jury had cognizance of the case. It
would follow, therefore, that the circuit court erred in
reversing the verdict and dismissing the case for want of
jurisdiction in the original triers. That court ought to
have proceeded with the cause, *de novo*, and disposed of
it on the merits

The record shows that testimony was adduced tend-
ing to prove that Bedwell was one of the registrars of
voters of Yazo county, acting in that capacity immedi-
ately preceding and preparatory to the election in
November, 1871, at which he was a candidate for the
office of chancery clerk, and that he received a majority
of the votes cast. After these developments were made,
Bedwell made his motion to reverse the verdict and dis-
miss the cause. As already remarked, if the petition
set forth grounds of contestation, the original inquisi-
tion could entertain the subject. If that be so, the
circuit court, on appeal, could try *de novo*, and it was
wrong to sustain the motion. The causes for which the
court dissmissed, might have been proper for considera-
tion on the trial in that court.

The questions arising in this contestation have been
elaborately discussed in all their bearings, and as the
case will be remanded to the circuit court, it may be
proper now to state the conclusions to which we have
come.

It is claimed for Sublett, that although Bedwell
received a majority of the votes cast, yet he (Sublett)
is entitled to the office, because the votes cast for
Bedwell are illegal, he being under a prohibition to
become a candidate at that election, holding the office
of registrar, and participating in determining who were
competent electors to vote thereat. Concede that Bed-
well was ineligible for that reason, would it follow
that Sublett would be entitled to the office? The

foundation of our system of government reposes upon the ultimate sovereignty of the people. Those who exert authority and discharge the functions of government in any of the departments among which its powers are distributed, come into existence and perform the functions respectively assigned them, according to the modes prescribed by the people in the organic law, framed by their representatives and adopted by themselves. When they reserve to themselves the selection of a class of officers by popular election, a fundamental principle (unless otherwise expressly provided) is, that the person receiving a majority of legal votes over his competitor is entitled to the office. It can not be said that the candidate has been elected unless he has received a majority of the legal votes cast; he is not the choice of the people. If the majority make choice of a candidate under some personal disability, disqualifying him from taking and enjoying the office, the utmost that can be said of it is, that there has been no election. The election, by a majority or plurality of votes (as the law may be), is the foundation of the "right" to the office. The certificate or the commission is only evidence of that fact.

If the majority candidate is disqualified, it does not follow that he who has received the next highest vote and is qualified, shall take the office. The election laws are framed on this theory: The registrars or inspectors, upon a canvass of the ballots, give the certificate to the person who has the largest vote. So the jury in contestation cases find who has received the largest number of legal votes. The general principle pervading our election system is, that the highest vote entitles to the office—if its recipient can take. There is by implication a negation of the office to the minority candidate, in all cases, except those covered by the last section of the schedule to the constitution (sec. 15). That section in its operation will be temporary. (For

VOL. XLVII.—18

we hope and believe that the condition of affairs out of which it arises will never again be repeated in our future history.)  It was intended to provide for a crisis. Its motive was to exclude from public places and trust those who had participated in the late rebellion, and who were under peculiar obligations to the United States to observe faith and allegiance to them—the exclusion, however, not to be permanent, but only for such time as congress should choose to keep such persons under disability.  The section has now almost ceased to have effect, congress having so far interposed relief as that it does not now apply to perhaps as many as twelve of our citizens.  The section is as follows:

"If any candidate receiving the highest number of votes can not take the oath of office prescribed in this constitution, then the candidate receiving the next highest vote shall be entitled to enter the office," etc. Among other particulars prescribed in the oath of office is, "that the (person) is not disqualified from holding office by the constitution of the United States, or the state of Mississippi."  The convention, doubtless, had especial reference to the 3d section of the 14th article of amendment of the constitution of the United States, excluding from holding office those who had taken an oath as an officer under the United States or any state, to support the constitution of the United States, and had engaged in insurrection or rebellion against the same."

The constitution does establish the rule that votes cast for a person *thus* disqualified are void and of no effect, unless the disfranchisement has been removed. The practical interpretation put upon the section has been, that it is a personal disability to "hold office," and if that be removed before the term begins, the election is made good, and the person may take the office.  In this special case the constitution adopts the English rule, that votes cast for an ineligible candidate are thrown away, and those only are available which

are given to the eligible candidate; but this only shall be applied to those who " can not take the prescribed oath." No other disability works this result. If a person who is ineligible for any other reason—as for want of age, not 21, to qualify for a representative, or 25 years of age, to qualify for senator; or has not resided in the county and state the prescribed time, or who is by some special statute made ineligible—in these and such cases, votes cast for these persons are not void; because the constitution does not say that the candidate receiving the next highest vote shall enter upon the office. Such disabilities are not embraced in the terms of the 15th section of the schedule, nor are they within its reason and intendment.

That section was meant to make it impossible, so long as the disability continued, for the class of persons, therein more especially referred to, to participate in the government by holding its offices. Votes cast for those who may be under other disabilities, are valid or not valid under the general law.

Without going into the general reasoning, the great weight of American authority, and, as we think, upon the soundest consideration, is, that although the majority vote for a disqualified person, the votes so cast are not illegal, and therefore to be treated as naught; but the result is, if the ineligible candidate can not take the office, the electors have failed to make a choice. In truth, there has been no election at all, and the minority candidate has no right to the office. State of Georgia v. Swearingin, 12 Ga. 24 ; State ex rel. of Off v. Smith, 14 Mich. 448; State v. Giles, 1 Chand. 112; Saunders v. Haynes, 13 Cal. 152; 23 La. 314; The Answer of the Supreme Court of Maine, 38 Me. 597. The case of Vance and Abbott in U. S. Senate, recently, was considered upon its legal merits and decided in accordance with the great weight and merit of American judicial adjudication.

We are of opinion, therefore, that if Bedwell, who received the majority of votes, could not take and hold the office, the petitioner, Sublett, would not be entitled to it as the recipient of the next highest vote.

The remaining question is, whether Bedwell is competent to take the office. The law creating the office of registrar, among other things declares that he shall not be a candidate for any office at the next ensuing election. Sec. 342, p. 85, Code. The section immediately preceding, in giving the form of oath, among other things contains these words: "That I (registrar) am not, nor do I expect to be, a candidate at any election to be held in this county during the present year." The board of registrars shall be appointed on or before the first Tuesday in September preceding any general election, whether that election shall be annual or biennial. The general election as fixed by law, is in November. The especial duty of this board is to determine who are legal voters, and to put the evidence of the fact in official form.

The words employed in the statute are, perhaps, not as precise and definite as might have been used to express the purpose. But it is hardly to be doubted that the intent was to declare that a registrar shall not be competent to be voted for and elected to any office, at the election next ensuing that in which he has been judging of the qualifications of electors. The reason is obvious. To insure a fair, honest, and unbiased judgment on the qualifications of electors, the registrar should not be exposed to the temptation of being in any wise influenced by considerations of whether the electors might or might not be disposed to favor his pretensions to office.

The 26th section of the 3d article of the constitution of 1832, prohibited the appointment of a senator or representative to any civil office which shall have been created * * * during the term" of such senator or

representative.   If we adopt in all its truth the doctrine maintained in Shelby and Alcorn, 36 Miss. 273, in the construction of this provision, we would hold the election of Bedwell to be absolutely void.   Alcorn was a member of the legislature when the levee statute of 1854 was passed; under the law he had been appointed treasurer of the board by the board of police of Coahoma county.   In a collateral suit, brought to secure moneys belonging to the levee funds, it was declared that the "appointment was void," "void for want of capacity in the appointee to accept, and for want of power in the board of police."   We perceive no distinction in principle in an incapacity to take office declared by the constitution, and an incapacity defined by the statute creating the office.   We entirely concur in so much of this judgment (which is all that applies here) as holds that the appointee was disqualified to take the office.   The law prescribes who may vote as well as who may hold office.

Legal voters are male inhabitants twenty-one years of age, or over, except idiots and insane persons, and Indians not taxed, citizens of the United States or naturalized, who have resided six months in the state, and one month in the county, and who are duly registered, and not disqualified by reason of crime.   Art. 7, sec. 2, Constitution.   It is a majority or plurality of electors with these qualifications, who many choose to office.   To determine who is a "legal voter," as used in sec. 391 of the Code, we look to see whether the person has these qualifications.   Votes cast by such persons are legal votes, although given to one who is ineligible.   The votes are ineffective to confer the office, not because of any legal infirmity in the electors, but because the individual has not himself the capacity for the office.   In such cases, as already observed, upon the fact being ascertained, there has been a failure to fill the office, and it is vacant "*de jure*."

It was argued, also, that the question of right to this office could only be tested by a proceeding in " *quo warranto.*" Code, § 1490, *et sequiter*. The statute only applies, and such was also the common law, where there is already an " incumbent " holding a public office, or exercising its functions. Neither the law officer of the state, nor a " citizen claiming an office, usurped unlawfully, or exercised by another, can initiate such a suit, except against one already in office. The statute (§ 391) applies to a contestation between claimants to the office before the term begins, and before the office has been entered upon. To give full effect to that remedy, it must be so construed as to bring into investigation all the matters proper to be considered, in order to determine the right to the office.

For the error hereinbefore indicated, to wit: the reversal of the verdict and the dismissal of the cause for want of jurisdiction in the justice and jury, the judgment is reversed, and cause remanded to the circuit court for further proceedings.