MILLER *v.* FOWLER.

(In Banc.   Jan. 27, 1947.)

[28 So. (2d) 837.   No. 36318.]

Dudley W. Conner, of Hattiesburg, for appellant.

**Harris Sullivan,** of Hattiesburg, for appellee.

Argued orally by **Dudley W. Conner**, for appellant.

**Griffith, J.,** delivered the opinion of the court.

The parties, as landlord and tenant, made a lease contract on January 19, 1943, one of the provisions of which reads as follows:

"This lease contract shall be and remain in full force and effect until four (4) months after all acts of warfare between the United States of America and the countries with whom she is now at war (Germany, Italy and Japan) shall have ceased."

In view of subsequent events the landlord was of the opinion that the lease would expire on December 14, 1945, four months after the date of the Japanese armistice, hereafter more fully mentioned, and on October 25, 1945, he gave his tenant notice in accordance with that interpretation, to which on November 30, 1945, the tenant replied, stating that he disagreed with that view, and would remain in possession. On December 18, 1945, the landlord instituted this statutory action in the county court to remove the tenant on the charge that the latter was holding over after the expiration of his term. In due course, the case reached the Circuit Court, where it was dismissed. The question debated by the parties, and for decision at this time, is whether the lease had expired at the time of the institution of the action. The position taken by the landlord has already been stated, while the tenant makes several contentions in the alternative, some of which, if sustained, would result in keeping the lease alive even until the present day.

In construing a written contract the words employed will be given their ordinary and popularly accepted meaning, in the absence of anything to show that they were used in a different sense. 17 C. J. S., Contracts, Sec. 301,

p. 718. The language of a contract must be given its usual and ordinary meaning, unless it is clear that certain words or terms are employed in a technical sense. 12 Am. Jur. p. 759.

There is nothing in this record to show that the words were used in the technical sense to denote that the period contemplated was four months after peace treaties were formally signed or ratified, or after all occupation troops are withdrawn, or after the formal proclamations have been issued by the political department of the government that the war is over, as contended by the tenant. And a diligent search has failed to find any definitions in the law books of the terms used in the quoted clause, so that the parties could not have had any such definitions in mind, there being none such.

The language discloses rather that the parties chose to use terms of physical significance, to make their reference to events which could be seen of all men as they came to pass upon the ground in the different parts of the world, and not to announcements of political interpretation,—to make the test what happens as a matter of actual fact rather than to look to some technical or political theory of it. And certainly the parties could not have contemplated the presence of occupation troops as being any test because, first, these remain as the agencies of peace rather than of warfare; and, second, the parties must have known that occupation troops would probably remain for years, and that formal peace treaties and the like would be deferred for a long time.

We must look, then, to the standard dictionaries of our language, and first to the dominant word, "warfare," and we find that it denotes the waging of war and that in turn, means military operations or armed hostilities between those representing states or nations. And when we go further, and consider "acts of warfare," it must mean acts of armed hostility of such a character that the participants therein, if captured, will be entitled to the treatment accorded by civilized nations to prisoners of

war, rather than that meted out to unauthorized bands of insurgents or brigands or marauders. If the latter are to be considered as waging war, we might as well say that there has never been a cessation of warfare, and perhaps never will be in all the history of men.

Courts may take judicial notice of important historical facts relating to war. 31 C. J. S., Evidence, Sec. 62, pp. 639-642. We may take judicial knowledge of the fact that after September 27, 1943, all acts of warfare between the United States and Italy came to an end, and likewise on May 8, 1945, as between the United States and Germany; and we may take notice also from the current and undisputed facts of history that all armed conflicts in those two countries ceased on the stated dates, except as to an occasional group of unauthorized marauders, who were not engaged in acts of warfare, but rather in the enterprises of outlaws or criminals.

We take notice that on August 14, 1945, an armistice between the Japanese government and ours was arranged, and that on September 2, 1945, the Japanese Empire, by its duly commissioned agents, authentically authorized by the Emperor himself, signed on board the Missouri articles of unconditional surrender of all the armed forces of that country. But we must take notice also of the facts borne to us by the current history of the times, here under consideration, that all acts of warfare between our forces and those of Japan did not cease on August 14, 1945, but that, on the contrary, considerable of the Japanese forces were scattered over such a wide territory and in so many inaccessible places with such difficult means of communication with the home authorities, that substantial units of them did not learn of the armistice in any manner considered by them to be authentic, even up to the day of the surrender, and that in the meantime they were still in hostile array carrying on war.

We have already said that we are not to construe the terms of the contract here in controversy in a technical way, but rather according to the actual physical facts

manifest on the ground. We are, therefore, unable to agree that *all acts* of warfare with the Japanese forces, acting as military units—and not as criminal organizations—ceased on Armistice Day. We concluded that the calculation as to the cessation of all acts of warfare cannot be extended further back than the day of the surrender, September 2, 1945.

Whether upon more complete information than is now before us, the basic date of calculation is to be placed some four or five months after September 2, 1945, and to a date when, as a matter of fact, the last of the Japanese military units actually surrendered, we do not decide for the reason that the action was brought on December 18, 1945, which was before the expiration of four months from September 2, 1945, and as a consequence, for this reason alone, the action was premature. It is an indisputable and invariable rule of law that a right of action must be complete when an action therefor is commenced. Georgia Pac. Railway Co. v. Baird, 76 Miss. 521, 523, 24 So. 195, 1 C. J. S., Action, Sec. 127, p. 1393.

The judgment of the circuit court in dismissing the action was correct except that it should have been without prejudice to a new action, and the judgment will be affirmed with that qualification.

Affirmed without prejudice.