667 So.2d 1319 (1995)
STATE of Mississippi on Relation of Ernest HOLMES
v.
William L. "Bill" GRIFFIN, Jr.
No. 94-CA-01275-SCT.
Supreme Court of Mississippi.
November 30, 1995.
Rehearing Denied February 15, 1996.
*1320 Ceola James, Vicksburg, for Appellant.
Stephen L. Thomas, Lake Tindall & Thackston, Greenville, for Appellee.
Before HAWKINS, C.J., and ROBERTS and SMITH, JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:

INTRODUCTION
This case presents a unique first impression question regarding our state constitutional qualifications under Article 6, Section 154 for the elected public office of chancellor in Mississippi. We find that the drafters of the Mississippi Constitution of 1890, specifically Section 154 of Article 6, intended that an attorney's eligibility for said office does not require that he be a Mississippi resident for the five years immediately preceding an election for chancellor. Accordingly, we affirm the lower court's interpretation of Article 6, Section 154 of the Mississippi Constitution of 1890 as it is without error.

STATEMENT OF THE CASE
This case began procedurally on November 28, 1994, with the filing of Ernest Holmes' (hereinafter Holmes) Contest of Qualifications of Candidate After First Primary Held During The General Election in the Circuit Court of Washington County, Mississippi. Said action was originally filed pursuant to Miss. Code Ann. § 11-39-1 et seq. naming the people of the state of Mississippi as the plaintiffs on relation of Holmes in his capacity as a private person and registered voter residing in Greenville, Washington County with Ceola James (hereinafter James) acting as his attorney. James subsequently "co-signed" the complaint during the trial but Judge Evans held this to be of no effect. Holmes was the campaign manager of James who lost the November 8, 1994, election for chancery court judge of Chancery District Nine, Subdistrict One which was created by House Bill 1809.
Holmes sought to have the certification of William L. "Bill" Griffin, Jr. (hereinafter Griffin) as the winner declared null and void for failure by Griffin to comply with the requirements of Article 6, Section 154 of the Mississippi Constitution of 1890. It was alleged that Griffin had not been a practicing attorney or a resident of the State of Mississippi for the five years immediately preceding the election which allegedly made Griffin ineligible. Therefore, Holmes alleged that this would require the other candidate, James, to be declared the winner.
Griffin filed his Answer on December 6, 1994, alleging that Holmes' pleading had failed to state a claim upon which relief could be granted, failed to join the necessary parties, i.e., James, that Griffin had not yet *1321 taken office to be subject to a writ of quo warranto summons, and that Article 6, Section 154 did not require a candidate for chancery judge to be a resident and practicing attorney for the five years immediately preceding the election. Trial was scheduled for December 12, 1994.
The Honorable Gray Evans was the circuit judge presiding over the December 12, 1994, trial. Judge Evans heard arguments from both parties and dismissed the complaint but rendered a ruling on December 15, 1994. Judge Evans ruled against Holmes and James by dismissing the case and finding (1) that Holmes did not have standing, (2) that the application for Writ Quo Warranto was denied because Holmes had no lawful entitlement to the office in question, (3) the action was premature because Griffin had not taken office yet, and (4) that Holmes essentially wanted the court "to rewrite the Constitution and insert the words `immediately preceding' before the words `citizen of this state' and likewise to insert those same words before the phrase following the limitation that a candidate be a practicing lawyer for five years." Judge Evans ruled that he was "absolutely convinced that Plaintiff's suggestion that these words were unintentionally omitted from the Constitution of 1890 is without merit."
Aggrieved by Judge Evans' ruling, Holmes, with James as his attorney, filed his notice of appeal seeking an expedited ruling by this Court on the following issues:
I. WHETHER THE APPELLEE MEETS THE REQUIREMENTS OF ARTICLE 6, SECTION 154 OF THE MISSISSIPPI CONSTITUTION?
II. WHETHER CEOLA JAMES IS ENTITLED TO BE DECLARED THE WINNER OF THE ELECTION OR WHETHER A SPECIAL ELECTION SHOULD BE DECLARED?
Griffin did not cross-appeal but rather stated the following as the issues for appeal.
I. DID APPELLANT, ERNEST HOLMES, (OR CEOLA JAMES, SHOULD SHE BE DEEMED AN APPELLANT), HAVE STANDING TO BRING AN ACTION IN THE NATURE OF QUO WARRANTO? IS CEOLA JAMES PROPERLY AN APPELLANT? DID HER SIGNING THE COMPLAINT IN COMPLIANCE WITH RULE 11 LEAD COUNSEL FOR THE APPELLEE OR FOR THE CIRCUIT COURT TO TREAT HER AS A PLAINTIFF OR PARTY IN INTEREST? IS THE ISSUE OF CEOLA JAMES' ENTITLEMENT TO THE OFFICE AS A RESULT OF BEING A SECOND PLACE FINISHER IN AN ELECTION PROPERLY BEFORE THIS COURT? IF SO, IS CEOLA JAMES, AS A SECOND PLACE FINISHER IN AN ELECTION, ENTITLED TO ASSUME THE OFFICE IN THE EVENT THE ELECTED CANDIDATE IS NOT CONSTITUTIONALLY QUALIFIED?
II. WAS APPELLANT'S ACTION IN THE NATURE OF WRIT OF QUO WARRANTO, WHICH WAS COMMENCED BEFORE THE APPELLEE ASSUMED OFFICE PREMATURE?
III. DOES ARTICLE 6, SECTION 154 OF THE MISSISSIPPI CONSTITUTION OF 1890 REQUIRE THAT A CHANCELLOR PRACTICE LAW IN AND BE A RESIDENT OF MISSISSIPPI FOR A FIVE YEAR PERIOD IMMEDIATELY PRECEDING HIS ELECTION, OR DOES IT MERELY REQUIRE THAT AN ELECTED CHANCELLOR HAVE PRACTICED LAW AND LIVED IN MISSISSIPPI FOR A PERIOD OF FIVE YEARS?
IV. CAN APPELLANT NOW ARGUE THAT APPELLEE WAS NOT A PRACTICING ATTORNEY AT THE TIME OF THE ELECTION?

STATEMENT OF THE FACTS
The facts of this case are limited, undisputed and begin on November 8, 1994, with the chancery judge election for Chancery District Nine, Subdistrict One between William L. "Bill" Griffin, Jr. and Ceola James. The incumbent, Chancellor Nathan P. Adams, Jr., did not run for reelection. Griffin received the majority of votes and was certified as the winner and new chancellor for said district.
*1322 Subsequently, James decided that Griffin had not met the constitutional requirements under her interpretation of Section 154. Holmes raised these concerns in his contest motion wherein James was not a party and instead acted as counsel for Holmes. However, James "co-signed" the complaint during the trial.
The beginning of the trial reflects that Judge Evans was concerned with the threshold issue of Holmes' standing and in what capacity James was acting for these proceedings. The court requested that James read the brief submitted by Griffin alleging the lack of standing. James suggested that she would "co-sign" the complaint if needed to resolve any possible standing problem that Holmes may have had and did sign it before the arguments on the merits began. James asked the court to only rule upon the issue of the constitutional requirement of the office of chancery judge under Art. 6 Section 154. Judge Evans moved forward with the proceedings to hear arguments concerning the constitutional requirements while reserving a ruling at that time on the standing issue.
James presented her argument which essentially amounted to a suggestion to the trial court to interpret Section 154 as impliedly requiring that the five-year requirement mean "immediately preceding" the election and not five years at any time prior to the election for chancellor. Stephen Thomas (hereinafter Thomas), representing Griffin, followed with his arguments that Section 154 does not require that the candidate be a resident and practicing attorney "immediately preceding" the election. Thomas argued that the Constitution of 1890 and its three predecessors never included such language and that there were many other sections with similar requirements that did include the "immediately preceding" language impliedly indicating that the absence of such language was not an oversight by the drafters of the Constitution of 1890. No testimony was given by Griffin.
The parties stipulated to the following facts at the conclusion of the trial. (1) Griffin was not a resident of the State of Mississippi and did not practice law for the five years immediately preceding the election, (2) Griffin had been a citizen of Mississippi for over thirty-five years, (3) Griffin had continuously been a member of the Mississippi bar since 1975, (4) Griffin actively practiced law in Mississippi from 1975 to 1986, (5) Griffin practiced law from 1986 to 1992 in California in a corporate capacity, (6) Griffin practiced law in Mississippi from 1992 to present on a limited basis, (7) Holmes did not claim an entitlement to the office of chancellor of the Ninth Chancery District, (8) Griffin received, which was verified by the appropriate election officials, the majority of votes for the office of chancellor of Subdistrict 1 of the Ninth Chancery District on November 8, 1994, and (9) that the only dispute was the interpretation of Section 154.

DISCUSSION OF ISSUES
I. DID APPELLANT, ERNEST HOLMES (OR CEOLA JAMES, SHOULD SHE BE DEEMED AN APPELLANT), HAVE STANDING TO BRING AN ACTION IN THE NATURE OF QUO WARRANTO? IS CEOLA JAMES PROPERLY AN APPELLANT? DID HER SIGNING THE COMPLAINT IN COMPLIANCE WITH RULE 11 LEAD COUNSEL FOR THE APPELLEE OR FOR THE CIRCUIT COURT TO TREAT HER AS A PLAINTIFF OR PARTY IN INTEREST? IS THE ISSUE OF CEOLA JAMES' ENTITLEMENT TO THE OFFICE AS A RESULT OF BEING A SECOND PLACE FINISHER IN AN ELECTION PROPERLY BEFORE THIS COURT? IF SO, IS CEOLA JAMES, AS A SECOND PLACE FINISHER IN AN ELECTION, ENTITLED TO ASSUME THE OFFICE IN THE EVENT THE ELECTED CANDIDATE IS NOT CONSTITUTIONALLY QUALIFIED?
II. WHETHER CEOLA JAMES IS ENTITLED TO BE DECLARED THE WINNER OF THE ELECTION OR WHETHER A SPECIAL ELECTION SHOULD BE DECLARED?
III. WAS APPELLANT'S ACTION IN THE NATURE OF WRIT OF QUO WARRANTO, WHICH WAS COMMENCED *1323 BEFORE THE APPELLEE ASSUMED OFFICE PREMATURE?
Prior to the adoption of our rules of civil procedure, there were two forms of a writ of quo warranto; a public and a private writ.[1],[2] The distinction between the public and private quo warranto actions is significant. In a public action the respondent has the burden of proving his entitlement to the office against a challenge from the state by either the district attorney or the attorney general. Jones v. State, 207 Miss. 208, 42 So.2d 123, 125 (1949). On the other hand, a private quo warranto action is required to be brought on behalf of the state by the person claiming an entitlement to the office which puts the burden on the plaintiff to establish his entitlement to the office. Andrews v. Covington, 69 Miss. 740, 746, 13 So. 853 (1892). Also, the relator in a private writ of quo warranto must stand on the strength of his entitlement to the office as opposed to the weaknesses of the person alleged as not properly holding the office. State v. Tucei, 175 Miss. 218, 166 So. 370, 370 (1936).
Therefore, in comparison to a public writ, a person need not have the private petition for writ of quo warranto filed by the attorney general or district attorney so long as it is filed in the name of the state on relation of another who is seeking their right to the office against a person who has held over in the office when the petitioner has been elected to said office. State ex rel Funches v. Keys, 215 Miss. 562, 61 So.2d 339, 340 (1952). For example, had Chancellor Adams refused to relinquish the office after Griffin had been elected, then Griffin could have properly, in the name of the state and on relation of his own behalf, filed a private writ of quo warranto pursuant to Funches to oust Adams from office. However, this is not the situation in this case.
Instead, we have a person, Holmes (and James, perhaps, giving her the benefit of the doubt as being a party) who merely allege that Griffin is not qualified for the position; not that she has been elected and is being prevented from taking office because of a holdover person. Accordingly, the private writ of quo warranto was applicable since there was no holdover person in office to oust. Holmes and James, with the State as the appellant, merely allege that Griffin is ineligible, pointing to his weakness rather than to the strengths of her own claim in contradiction of State v. Tucei, 175 Miss. 218, 166 So. 370, 370 (1936). ("in order for appellant to succeed he must stand on the strength of his own claim to the office and not on the weakness of the claim of appellee.")
As applied to the facts of this case, this claim should have been brought either by the attorney general or the district attorney for the ninth chancery district, subdivision one on behalf of Ceola James.[3] Instead, we have a private writ of quo warranto brought by a voter of the district in the name of the State on relation of himself and presumably for James. As such, we have a private writ of quo warranto used where a public writ of quo warranto should have been used to contest Griffin's qualifications for office.
Both writs are still available pursuant to Miss. Code Ann. § 11-39-1 et seq. which states in its pertinent sections and parts:
§ 11-39-1. To what cases applicable.
The remedy by information in the nature of a quo warranto shall lie, in the name of *1324 the state, against any person or corporation offending in the following cases, viz.:
First.  Whenever any person unlawfully holds or exercises the function of any public office, civil or military, or franchise, or any office in any corporation, city, town, or village, and to try the right to any such office. (emphasis added)... .
§ 11-39-3. Proceedings.
The proceedings in the cases set forth in Section 11-39-1 shall be by complaint, in the name of the state, by the Attorney General or a district attorney, on his own motion or on the relation of another, and, in a case to try the right to an office, on the relation of the claimant thereof....
§ 11-39-5. Trial of right to office.
In case the proceedings be on the relation of a person claiming to be entitled to an office, the ground of his claim shall be stated by proper averment, and judgment shall be rendered according to the rights of the respective claimants; and, if it be in favor of the relator, he shall be entitled to the office on qualifying according to law, and may recover of the defendant in an action all damages that may have accrued in consequence of withholding the office from him.
Under these statutes, to pursue a modern public writ of quo warranto to challenge a person's qualifications to a public office, as opposed to ousting a holdover person which is done by private writ quo warranto, the claim must be by the State on its own motion or for the person claiming the right to the office. Therefore, the proper procedure for challenging the constitutionality of Griffin's qualifications would have been by public writ of quo warranto filed by the attorney general or district attorney for James. However, James contends that this should not be held against her, with which we agree.
Despite the fact that this should have been a public writ of quo warranto, Holmes did not claim an entitlement to the chancellor position. Thus, he was an improper plaintiff for a private writ due to his lack of standing. Andrews v. Covington, 69 Miss. 740, 746, 13 So. 853 (1892). Although the private writ of quo warranto is inapplicable, James should have been the plaintiff as opposed to Holmes, but she was apparently not a party and instead acted as the state's and Holmes' attorney. Griffin accordingly contends that, even assuming that the private writ of quo warranto was the proper procedural vehicle, James waived her right to being the plaintiff and did not cure such defect because she expressly "limited [their] prayer for relief to a ruling on the constitutional requirements," and thus that she is judicially estopped from resurrecting any possible claim to instatement in the office of chancellor. See, Banes v. Thompson, 352 So.2d 812, 815 (Miss. 1977) ("Judicial estoppel normally arises from the taking of a position by a party that is inconsistent with a position previously asserted"); Mississippi State Highway Commission v. West, 181 Miss. 206, 179 So. 279, 283 (1938) ("as a general rule a party is estopped from taking a position which is inconsistent with the one previously assumed in the course of the same action or proceeding").
Presuming that James did become the proper plaintiff and that an appropriate writ was used and that the case should not end here for lack of a plaintiff with standing, James claims that because she received the next highest votes in the election, that she is entitled to step into the chancellor's position should we find that Griffin is not qualified. The case of Sublett v. Bedwell, 47 Miss. 266, 275 (1872) explicitly states that, "the result is that if the ineligible candidate can not take office, the electors have failed to make a choice. In truth, there has been no election at all, and the minority candidate has no right to office." Id. Therefore, even if this Court were to find that Griffin was not qualified and that James became the proper plaintiff while presuming that her private writ was appropriate, James is still not entitled to be placed in Griffin's stead as requested pursuant to Sublett v. Bedwell, 47 Miss. at 276.
In summation, because this was not a suit to try ones's right to office or ousting a holdover person, this was properly not a private writ as was used. Instead, this case dealt with the constitutional eligibility of any person's right to hold the position of chancellor. In other words, the unlawful holding of *1325 an office because of an alleged lack of necessary requirements was the real issue. Therefore, this was a case that should have been a public writ of quo warranto brought by the attorney general or district attorney. Rather, this case was brought under the inapplicable private writ. Thus, since the attorney general or district attorney did not bring the suit, we find that it was properly dismissed as there was not a proper party with standing involved to pursue the claim.
In addition to Holmes' lack of standing, Judge Evans ruled that Holmes' claim was premature as well since Griffin had not taken office yet; i.e., Holmes' claim was in violation of the constitutional "ripeness" doctrine. Pursuant to Miss. Code Ann. Section 11-39-1, such a writ is for the purpose of challenging the right of someone "unlawfully holding or exercising the function of any public office." In O'Neal v. Fairley, 190 Miss. 650, 200 So. 722, 723 (1941), this Court stated:
in order to maintain such a proceeding [private writ of quo warranto for ouster] as this to try the right to a public office, it must appear that the respondent is in actual possession and use of the office in question. It is not sufficient for the information to show that the respondent lays some claim to the office without usurping the functions thereof.
See also, Hyde v. State, 52 Miss. 665 (1876); Andrews v. Covington, 69 Miss. 740, 13 So. 853 (1892).
As Griffin was not in possession of or exercising any function of the office of chancellor at the time of trial, Judge Evans was correct in finding that the claim was not ripe or premature for a private writ of quo warranto. O'Neal v. Fairley, 190 Miss. 650, 200 So. 722, 723 (1941). Additionally, the fact that Griffin has now taken office is of no effect to this case. As this Court has stated, "A cause of action must exist and be complete before an action can be commenced, and, when a suit is begun before the cause of action arises, it will generally be dismissed if proper objection is taken." Euclid-Mississippi v. Western Casualty & Surety Co., 249 Miss. 547, 163 So.2d 676, 679 (1964); Miller v. Fowler, 200 Miss. 776, 28 So.2d 837 (1947). Furthermore, "The mere passage of time without refiling is not sufficient." Euclid, 163 So.2d at 679 (Miss. 1964).
Accordingly, Holmes' claim was properly dismissed as premature, or not ripe, which cannot be cured with the passage of time during which Griffin has taken office without Holmes refiling. Therefore, even presuming that James was a party, it is still without merit due to a violation of the constitutional ripeness doctrine. However, under the principles of judicial economy and fairness, in conjunction with the attorney general's failure to respond to James' request to pursue the public writ of quo warranto, and in the interest of the public policy involved with the merits of the issues raised today, we will not dismiss this case for a procedural defect.

I. WHETHER THE APPELLEE MEETS THE REQUIREMENTS OF ARTICLE 6, SECTION 154 OF THE MISSISSIPPI CONSTITUTION OF 1890?

III. DOES ARTICLE 6, SECTION 154 OF THE MISSISSIPPI CONSTITUTION OF 1890 REQUIRE THAT A CHANCELLOR PRACTICE LAW IN AND BE A RESIDENT OF MISSISSIPPI FOR A FIVE YEAR PERIOD IMMEDIATELY PRECEDING HIS ELECTION, OR DOES IT MERELY REQUIRE THAT AN ELECTED CHANCELLOR HAVE PRACTICED LAW AND LIVED IN MISSISSIPPI FOR A PERIOD OF FIVE YEARS?
The central dispute revolves around the interpretation of Section 154 of the Mississippi Constitution of 1890 which states:
Art. 6, § 154 Mississippi Constitution of 1890.
Section 154. No person shall be eligible to the office of judge of the circuit court or of the chancery court who shall not have been a practicing lawyer for five years and who shall not have attained the age of twenty-six years, and who shall not have been five years a citizen of this state.
James and Holmes contend that the drafters of the Constitution inadvertently forgot to include the language, "immediately preceding" because it appears in the requirements *1326 for many other elected officials such as Supreme Court judges. Naturally, Griffin contends that the drafters made a conscious decision to not include such language for chancellors since it does appear in other sections of the constitution. Griffin alleges that the immediately preceding language is for those positions pertaining to statewide offices, such as Supreme Court Justice, since it does not appear in sections of the constitution pertaining to local offices such as a chancellor or circuit judge.[4] Therefore, Griffin's and James' arguments are diametrically opposed, but use similar rationale, leaving the question for the Court to decide if in fact the inclusion or absence of the "immediately preceding" language was intentional or an oversight of the drafters.[5]
A somewhat similar discrepancy of the "immediately preceding" language occurs between Section 41 and Section 42 of Article 4 of the Mississippi Constitution of 1890. Section 41 requires that persons seeking a seat in the State House of Representatives be a citizen of that county for "two years immediately preceding his election." Section 42 involves the requirements for a person seeking a seat in the state senate but says that said person must be an actual resident "for two years before his election." James offers an Attorney General's Opinion pertaining to the interpretation of Section 41 and Section 42 as persuasive authority for construing Section 154.[6] It is unclear if such information was presented to the trial judge but it appears that it was not. There was also a pending request by James to the Attorney General on the interpretation of Section 154 which has not been answered and not part of the record as of now.
The Attorney General Opinion interpreting Sections 41 and 42 stated that the "for two years before his election" language in Section 42 meant "immediately preceding." Accordingly, James suggests that the same rationale should be applied by the Court in its interpretation of Section 154 where the "immediately preceding" language is also absent. However, Section 154 does not have language similar to the "for two years before his election" language in Section 42 where it is more plausible that the "before" language of Section 42 could mean "immediately" before. Therefore, we find that the Attorney General's interpretation of Section 42 is not analogous to our present interpretation of Section 154 dealing with chancellor qualifications despite the fact that it is merely a persuasive authority as well.
The Mississippi Constitution of 1890 is our present and fourth constitution under which the State of Mississippi has operated a government. It appears to this Court that after four opportunities to draft such a Section as 154, that the drafters would have included the immediately preceding language if they had intended to do so, as they did for other positions. As the Court stated in Ex Parte Dennis, 334 So.2d 369, 373 (Miss. 1976), the construction of a constitutional section is to be determined from the plain meaning of the words and terms used within it. Accordingly, we find that the plain meaning of Section 154 is that a candidate for chancellor of this state need not necessarily be a citizen for the immediately preceding five years, but instead need only have been a citizen of the state for five years prior to the election. However, this Court is also aware of our rule of law requiring the constitution to be reviewed as a whole to determine the intent of any disputed provision. St. Louis & S.F. Ry. Co. v. Benton County, 132 Miss. 325, *1327 96 So. 689, 690 (1923); Green v. Weller, 32 Miss. 650, 678 (1856).
In summary, we find that looking at the constitution as a whole pursuant to Benton County, and to the plain meaning of the words under Ex Parte Dennis, that the framers and drafters did not intend to include the immediately preceding language under either constitutional construction principle. It appears to this Court that if the drafters of the 1890 Constitution had intended to include such language then they would have done so given the significant importance of such a provision and its inclusion in other sections. Furthermore, the preceding three constitutions did not include an "immediately preceding" residency requirement.
The decision to require an immediately preceding residency requirement is now legislative. The legislature, as the appropriate branch of government charged with the duty of enacting laws, can initiate the amendment process to the Constitution of 1890 to include such a requirement if it so chooses.

IV. CAN APPELLANT NOW ARGUE THAT APPELLEE WAS NOT A PRACTICING ATTORNEY AT THE TIME OF THE ELECTION?
This issue was listed by Griffin in his statement of issues and it is not listed as an issue in Holmes' brief but is addressed in his brief. The parties' stipulated facts at the conclusion of trial included the fact that Griffin had practiced law on a limited basis in Mississippi from 1992 to present. Naturally, this would procedurally bar Holmes from contesting such a fact on appeal. See Wilbourn v. Hobson, 608 So.2d 1187, 1189 (Miss. 1992) ("factual stipulations set boundaries beyond which this Court cannot stray"). Accordingly, this issue is not properly before the Court, not requiring a discussion or analysis.

CONCLUSION
We find that this case was properly decided by the trial court on all matters. The incorrect writ of quo warranto was used and Holmes did not have standing under the inapplicable quo warranto writ either. See Miss. Code Ann. § 11-39-1 et seq.; Andrews v. Covington, 69 Miss. 740, 746, 13 So. 853 (1892). The action was premature and not cured with the passage of time. O'Neal v. Fairley, 190 Miss. 650, 200 So. 722, 723 (1941); Euclid-Mississippi v. Western Casualty & Surety Co., 249 Miss. 547, 163 So.2d 676, 679 (1964). Furthermore, Section 154 does not imply or give any indication from the plain meaning of its words, that it was meant to include "immediately preceding" language. Instead, the contrary is our finding today. Holmes and James are also procedurally barred from arguing that Griffin was not a practicing attorney at the time of the election since it was a fact stipulated by the parties at trial. Wilbourn v. Hobson, 608 So.2d 1187, 1189 (Miss. 1992).
The case sub judice was dismissed by the trial court which nevertheless went on to rule upon the constitutionality of Section 154. Likewise, we find it necessary and in the public interest and policy to rule upon Section 154. Section 154 only requires that a person be a citizen and a practicing attorney for a total of five years preceding the election, not necessarily the five years immediately preceding the election exclusively. Accordingly, the trial court is affirmed on its constitutional interpretation of Section 154 as it coincides with the drafters' intentions.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., and DAN M. LEE and PRATHER, P.JJ., SULLIVAN, BANKS and SMITH, JJ., concur.
PITTMAN, J., dissents with separate written opinion.
McRAE, J., dissents with separate written opinion.
PITTMAN, Justice, dissenting:
I would agree with the result as found by the majority, however, this case should have been dismissed because of the procedural defect of the appellant not having standing to bring an action in the nature of quo warranto. Therefore, I dissent.
McRAE, Justice, dissenting:
The merits of this case are properly considered as a matter of public policy and for *1328 the sake of judicial economy and fairness. However, I must dissent from the majority in its interpretation of Art. VI, § 154 of the Mississippi Constitution of 1890 because of its conflict with the intended purpose of this section.
Article VI, § 154 establishes the following qualifications for circuit and chancery court judges:
No person shall be eligible to the office of judge of the circuit court or of the chancery court who shall not have been a practicing lawyer for five years and who shall not have attained the age of twenty-six years, and who shall not have been five years a citizen of this state.
The purpose of establishing the five year citizenship requirement is so that an individual is familiar with the local interests, law, and needs of this state. If we interpret this section of our constitution to permit an individual to fulfill the citizenship requirement for circuit or chancery court judge by having been a citizen of this state for any five years of his life, as opposed to the five years preceding election, the purpose of this section of our constitution is lost.
The same reasoning [for the circuit and chancery court judge qualifications] applies here as to the supreme court judges set forth in a preceding section. A person before assuming so important an office as judge of one of these courts, should certainly be permanently identified with the state, and have acquired that knowledge and familiarity with its interest and needs and laws and institutions as to give him a rounded knowledge of both the legal and practical side of the courts and the administration of justice.
George H. Etheridge, Mississippi Constitutions 279 (1928). The majority certainly does not suggest any other purpose for the five year citizenship requirement in this section. One who has not been a citizen for the five years immediately preceding his term of office is obviously less familiar with the changing local interests, law and needs of this state. The competence to carry out the duties of this office likely decreases in direct relation to the intervening period of time spent as a citizen of another state. The citizenship requirement could just as well serve no legitimate purpose if the majority's interpretation prevails. If the majority's analysis and literal reading of § 154 is carried a step further, an individual would not be required to have practiced law in this state for five years. The entire objective of having qualified judges is destroyed as a result.
Our constitution should not be read as setting forth arbitrary qualifications for our circuit and chancery court judges. It is the duty of this Court to uphold the intent of our constitution and not rest upon the legislature's duty of enacting laws to give significance to the provisions of our constitution. Accordingly, I dissent.
NOTES
[1] With the adoption of the Mississippi Rules of Civil Procedure, effective January 1, 1982, the writ of quo warranto was abolished as a distinct and separate form of action. See, Dye v. State ex rel. Hale, 507 So.2d 332, 337 n. 4 (Miss. 1987) (discussion of abolition of writ of quo warranto). However, Appendix B to the Rules provides that,

The form of relief formerly obtainable under the writ of quo warranto, or writ in the nature of quo warranto, shall hereafter be obtained by motions or actions specifically seeking relief... .
[2] The substantive principle of the writ of quo warranto was preserved and recently reaffirmed in Barlow v. Weathersby, 597 So.2d 1288, 1293 (Miss. 1992).
[3] James claims that she was forced to file the private writ because her November 11, 1994, request to Attorney General Mike Moore to file a public writ went unanswered. However, the record does not reflect any effort by James to get the respective district attorney to pursue the public writ before pursuing the inapplicable private writ.
[4] For sections requiring a time period immediately preceding, See Miss. Const. Art. 4 § 41 (two-year House of Rep.), Art. 5 § 117 (five-year Governor), Art. 5 § 128 (five-year Lt. Governor), Art. 5 § 133 (five-year Sec. Of State), Art. 5 § 134 (five-year Treasurer), Art. 6 § 150 (five-year Supreme Court judge), Art. 6 § 171 (two-year Justice of the Peace), Art. 8 § 202 (five-year Superintendent of Public Education); For sections which do not require a time period immediately preceding, See Miss. Const. Art. 5 § 135 (sheriff, coroner, tax collector, and surveyor), Art. 6 § 174 (district attorney), Art. 6 § 176 (Board of Supervisors), Art. 8 § 204 (county superintendent of public education), Art. 11 § 230 (levee board commissioners).
[5] This Court is cognizant of the fact that our ruling on a chancellor's qualifications in the case sub judice impliedly rules upon circuit judge's qualifications as well since the same constitutional provision is applicable to the circuit court.
[6] The Attorney General Opinion discussed is 1990 WL 548243 (Miss.A.G.).