KING, Justice,
dissenting:
I. Is there a Residency Requirement?
¶ 31. I agree that there is a residency requirement for candidates for the office of Court of Appeals. Mississippi Code Section 9-4-1 provides, in pertinent part, that “[tjhe Court of Appeals shall be comprised of ten (10) appellate judges, two (2) from each Court of Appeals District, selected in accordance with Section 9-4-5.” Miss. Code Ann. § 9-4-l(2) (Rev.2002). Then, Section 9-4-5 provides the same:
*138 The term of office of judges of the Court of Appeals shall be eight (8) years. An election shall be held on the first Tuesday after the first Monday in November 1994, to elect the ten (10) judges of the Court of Appeals, two (2) from each congressional district; provided, however, judges of the Court of Appeals who are elected to take office after the first Monday of January 2002, shall be elected from the Court of Appeals Districts described in subsection (5) of this section. The judges of the Court of Appeals shall begin service on the first Monday of January 1995.
Miss.Code Ann. § 9-4-5(l) (Rev.2002).
¶ 32. Black’s Law Dictionary defines “from,” in pertinent part:
As used as a function word, implies a starting point, whether it be of time, place, or condition; and meaning having a starting point of motion, noting the point of departure, origin, withdrawal, etc.... One meaning of “from” is “out of.”
Black’s Law Dictionary 668 (6th ed.1990). Thus, “from each Court of Appeals District” means the candidate must come “out of’ the district or, in other words, be from the district. The statute is unambiguous and must be applied according to its plain meaning. Dialysis Solution, LLC v. Miss. State Dep’t of Health, 81 So.3d 1204, 1212 (¶ 26) (Miss.2010).
¶ 38. Based on a plain reading of the statute, a candidate for the office of Court of Appeals must reside within the Court of Appeals district for which she seeks office. Thus, I would reverse the trial court’s judgment that there is no residency requirement. But I differ from the Majority opinion regarding when Westbrooks must meet the residency requirement.
II. When must a candidate meet the residency requirement?
¶ 34. No statute states specifically when a candidate for the office of Court of Appeals must meet the residency requirement. The parties rely on Section 23-15-359, which gives candidates who are affiliated with a political party an opportunity to submit proof that all qualifications will be met by the time of the election:
The appropriate election commission shall determine whether each candidate is a qualified elector of the state, state district, county or county district they seek to serve, and whether each candidate meets all other qualifications to hold the office he is seeking or presents absolute proof that he will, subject to no contingencies, meet all qualifications on or before the date of the general or special election at which he could be elected to office.
Miss.Code Ann. § 23-15-359(8) (Rev.2007). But the statute also provides that “[t]he provisions of this section shall not apply to municipal elections or to the election of the offices of justice of the Supreme Court, judge of the Court of Appeals, circuit judge, chancellor, county court judge and family court judge.” Miss.Code Ann. § 23-15-359(6) (Rev.2007).
¶ 35. But in regard to municipal elections, which are exempted from Section 23-15-359, Mississippi Code Section 23-15-361 allows specifically a municipal-election candidate to “present[ ] absolute proof that he will, subject to no contingencies, meet all qualifications on or before the date of the general or special election.” Miss.Code Ann. § 23-25-361 (Rev.2007). This is similar to the allowance provided in Section 23-15-359(8). But there is no complementary statute regarding the Supreme Court or Court of Appeals on this point.
*139 ¶ 36. The majority opinion reads a provision — that Westbrooks must meet the residency requirement before her name is placed on the ballot — into the applicable statutes which simply is not there. The statutes regarding Court of Appeals candidates are silent as to when candidates must meet the residency requirement. See Miss.Code Ann. §§ 9-4-1 to -17 (Rev. 2002). For instance, must the requirement be met (1) at the date of filing, (2) when the Commission prepares to certify the ballot, or (3) on the date of the election? In contrast, Section 23-25-299 provides specifically when party-affiliated candidates must meet its requirements:
Upon receipt of the proper fee and all necessary information, the proper executive committee shall then determine whether each candidate is a qualified elector of the state, state district, county or county district which they seek to serve, and whether each candidate meets all other qualifications to hold the office he is seeking or presents absolute proof that he will, subject to no contingencies, meet all qualifications on or before the date of the general or special election at which he could be elected to office.
Miss.Code Ann. § 23-15-299(7) (Rev.2007) (emphasis added); See Cameron v. Miss. Republican Party, 890 So.2d 836, 842 (¶ 17) (Miss.2004) (holding that senatorial candidate “failed to show at the time of qualification for office with ‘absolute proof and ‘without contingencies’ that he would be a resident within the district at the time of the election”). No similar provision exists regarding Court of Appeals candidates. This Court has refused previously to read provisions into election law which are not specifically in the applicable statutes or constitutional provisions.
¶ 37. In State ex rel. Holmes v. Griffin, a voter challenged an elected chancellor’s qualifications. State ex rel. Holmes v. Griffin, 667 So.2d 1319, 1322-23 (Miss.1995). The issue was whether to be elected chancellor, the candidate had to be a resident of Mississippi for five years total or for five years immediately preceding the election. Id. at 1325-27. Although other constitutional provisions relating to elected officials included that “immediately preceding” language, the provisions relating to chancellors did not.[7] Id. at 1325-26. The Court refused to read the language into the statute, reasoning:
It appears to this Court that after four opportunities to draft such a Section as 154, that the drafters would have included the immediately preceding language if they had intended to do so, as they did for other positions.
Id. at 1326. Based on the plain language of the Constitution as written, the Court determined “that a candidate for chancellor need not necessarily be a citizen for the immediately preceding five years, but instead need only have been a citizen of the state for five years prior to the election.” Id.
*140 ¶ 38. Likewise, the applicable statutes — Sections 9-4-1 and 9-4-5 — are silent as to when Westbrooks must meet the residency requirement for the office of Court of Appeals. See Miss.Code Ann. §§ 9-4-1; 9-4-5 (Rev.2002). The Court should not make up or read a deadline into the statute which is not there. Thus, I opine that the Commission was premature in its decision to remove Westbrooks from the ballot.
¶ 39. The majority finds the existence of a residency requirement, but refuses to determine what that requirement is. Such an action is totally devoid of logic. The majority gives as a reason for this refusal that Westbrooks allegedly chose not to present evidence that she would meet the residence requirement. That statement is not absolutely accurate. On September 7, 2012, Westbrook wrote that she would meet the residency requirement. Additionally, Westbrooks submitted a signed lease and application for utility services for an apartment in the district.
¶ 40. On September 4, 2012, Kimberly Turner, Senior Attorney in the Secretary of State’s Election Division, sent an email to Westbrooks, which indicated that pursuant to 23-15-359, a candidate could appear on the ballot as long as there was assurance that he/she would be fully qualified by election day:
Of course, the satisfaction of candidate qualifications must be met at the time of the actual election; however, if candidate qualifications are not satisfied as of the date of the meeting of the State Board of Election Commissioners, the candidate must affirm that the unmet qualification will, beyond doubt, be met as of the date of the election.
¶41. On September 7, 2012, West-brooks responded to that email indicating a disagreement with the State’s position on residency, but affirmatively stating that by election day, she would have complied with the State’s stated position on residency:
To the extent that my position as stated above is unsatisfactory to the members of the State Board of Electors, I also certify that I will be a resident of district 2 on or before election day, if so required.
For reasons of its own, and contrary to the September 4, 2012, email, the State declined to accept this representation from Westbrooks, and directed that she appear for a hearing on September 10, 2012. This Court does not have a record, either in the form of a transcript or minutes, of the September 10, 2012, hearing. On September 11, 2012, Westbrooks requested in effect, a written ruling from the State as to the specific reasons for refusing to place her name on the November ballot. By letter dated September 12, 2012, the State refused Westbrooks’ request.[8]
*141 ¶ 42. In its September 12, 2012, letter, the State indicated that during the September 10, 2012, hearing in response to a question, Westbrooks’s attorney stated that Westbrooks had no intention of moving into the district.[9] In its letter, the State relies upon this statement as a reason to eliminate Westbrooks from the November ballot. The State does so notwithstanding that it also previously had received Westbrooks’ September 7, 2012, correspondence, in which she certified her intent to meet the state’s definition of residence prior to the November election. Accepting for purposes of discussion that this was as accurate reflection of counsel’s remark, because Westbrooks had previously indicated to the State her intent to comply with its definition of residence, it would be beneficial to know the circumstances which preceded and surrounded that response.
¶ 43. It has been the practice of the State, that candidates need be fully qualified only by election day. That practice now seems to have been abandoned in this case. If that is true, then this action would appear to be in conflict with the Voting Rights Act, which requires pre-clearance before changes in voting practices and procedures in this state may be implemented. See 42 U.S.C. §§ 1973— 1973 (aa-6). Beyond question, any change in the time at which a candidate must be fully qualified would be a change in the State’s voting practices and procedures, which would require preclearance. Just as it did in In re McMillin, this Court has an obligation to be aware of the application of the Voting Rights Act, and its interplay with elections in this state. See In re McMillin, 642 So.2d 1336 (Miss.1994).
¶ 44. Because 9-4-l(2) and 9-4-5 both are silent as to when a candidate must fulfill the residency requirement, I would hold that consistent with past state practice, Westbrooks had until the day of election to be a resident of the district. Because the State now seeks to abandon that practice, without having obtained the required preclearance under the Voting Rights Act, I would hold that attempted abandonment of this practice to be ineffective, and that Westbrooks has until the November election to meet the residency requirement.
¶ 45. In conclusion, I would reverse the trial court’s judgment regarding whether there is a residency requirement. If the Court determines that the trial court reached the right result, the Court may affirm the trial court’s holding on other grounds. See Cucos, Inc. v. McDaniel, 938 So.2d 238, 247 (¶ 26) (Miss.2006). Thus, I would affirm the trial court’s judgment to place Westbrooks on the ballot. All candidates’ names should be placed on the ballot. If Westbrooks wins the election and there then remains an issue regarding where she resides, any challenge to her residency may be addressed at that time. If she loses, the point is moot.
¶46. The majority also has precluded Westbrooks from filing a motion for rehearing. Its reason is that the ballots have been printed, and absentee balloting has begun. That is not a rational justification to preclude rehearing on an issue of this significance. The majority fails to identify any specific harm that is prevented by not allowing a rehearing in this case. But if this case has been wrongly decided, then there is significant harm to West- *142 brooks, her supporters, and their right to support a candidate of their choice.
KITCHENS, J., JOINS THIS OPINION; CHANDLER, J., JOINS IN PART.

. Holmes lists statutes which include the “immediately preceding” language and those which do not:
For sections requiring a time period immediately preceding, See Miss. Const. Art. 4 § 41 (two-year House of Rep.), Art. 5 § 117 (five-year Governor), Art. 5 § 128 (five-year Lt. Governor), Art. 5 § 133 (five-year Sec. Of State), Art. 5 § 134 (five-year Treasurer), Art. 6 § 150 (five-year Supreme Court judge), Art. 6 § 171 (two-year Justice of the Peace), Art. 8 § 202 (five-year Superintendent of Public Education); For sections which do not require a time period immediately preceding, See Miss. Const. Art. 5 § 135 (sheriff, coroner, tax collector, and surveyor), Art. 6 § 174 (district attorney), Art. 6 § 176 (Board of Supervisors), Art. 8 § 204 (county superintendent of public education), Art. 11 § 230 (levee board commissioners).
Holmes, 667 So.2d 1319 at n. 4.

. The letter stated, in pertinent part, that:
The SBEC performs its statutory duties during public meetings, as memoralized by the minutes thereof. The SBEC provides no written opinions as to either justify or substantiates those decisions publicly made following discussion, comment and vote.
Given that the SBEC is to reconvene today, September 12, 2012, to conclude its discussion and render a vote as to matters outstanding, the minutes of the Monday meeting have not been reduced to writing. Further, the minutes of the meeting(s) of the SBEC may not be deemed to constitute the office act(s) of said board until approved and adopted during a subsequent, yet to be scheduled meeting of the SBEC. For those reasons, the SBEC is unable to accommodate your request for "any and all minutes.”
In good faith, however, the SBEC has enclosed herein those documents it held in its possession during the Monday meeting relevant to your qualifications and, upon your request, will provide to you a true and *141 accurate copy of the original tape recording of the relevant portions of said meeting.

. The letter provided that: "In answer to a question posed by Secretary Hosemann, your counsel stated you did not intend to move into Congressional District Two, and it was your position that residency in said district was not required so as to maintain your candidacy."