JONES v. STATE ex rel. McFARLAND, DISTRICT ATTORNEY.

In Banc. Sept. 26, 1949.

No. 37373 (42 So. (2d) 123)

**R. S. Tullos** and **O. O. Weathersby**, for appellant.

**L. D. Pittman** and **T. J. Wills**, for appellee.

**McGehee, C. J.**

This is a quo warranto proceeding brought in the name of the State on the relation of Joe A. McFarland, District Attorney, to remove from the office of Marshal of the Town of Taylorsville, the appellant, Barney Jones, who is exercising the functions of the said office. The sole issue involved upon the trial was whether or not the appellant "resided" in such municipality within the meaning of the Constitution and the laws of this State at the time of his election during the year 1948 for the two-year term of 1949 and 1950 inclusive, and at the time of the institution of this proceeding.

Section 241 of the State Constitution of 1890 prescribes the qualifications of a qualified elector, and requires, among other things, that to be such the person must be one "who has resided in this state for two years, and one year in the election district, or in the incorporated city or town in which he offers to vote." Section 250 of the said constitution reads as follows: "All qualified electors and no others, shall be eligible to office . . . ." And Section 3762, Code of 1942, in prescribing the qualifications of an elector in a municipality, provides, among other things, that: "Every person who is a qualified elector of a county, who has resided within the corporate limits for one year next before he offers to vote, . . . shall be entitled to register and vote at all municipal elections".

The testimony on behalf of the respondent, Barney Jones, discloses that about fifteen years ago he established

his domicil outside the Town of Taylorsville, and about one mile from the corporate limits thereof, where his wife and children have continued at all times to reside; that the respondent and his wife have never been separated or divorced, but have at all times and do now recognize the continuance of the marriage relation; that the wife has not undertaken to set up a separate domicil to that where the husband has stayed but has merely resided with her children at the place provided for her by the husband, and where he says that he has occasionally visited while living in a homemade "house-trailer" in the Town of Taylorsville since the latter part of the year 1945, when he went to the town and engaged in the operation of a cafe business; that while operating the cafe for a period of three or four months he stayed in the trailer at night, and after selling the business he continued to remain in the town until he received an appointment as Deputy Sheriff of the county and Marshal of the town during the early part of the year 1946; that he registered as a voter in the town on April 1, 1946, and was elected Marshal during that year without opposition and served in that capacity during the years of 1947 and 1948, inclusive; that he came up for re-election in 1948, and when some question was raised as to his status as a qualified elector he moved his family into a rented house and lived with them in the town for approximately five weeks, and then moved his wife and children back to the home he owned outside of the corporate limits, giving as the reason therefor the fact that his salary as Marshal at $100 per month was insufficient to enable him to maintain a home for his family in the town; and that at no time have his wife and children ever resided, even for one night, in the house trailer where the respondent slept and prepared some of his meals.

It was further shown for the respondent by some of the town officials, election commissioners and others, that at all times when he was not on duty as Marshal he

could be found at the house-trailer by any one desiring to see him.

On the other hand, it was shown on behalf of the relator that for several years, and up to the time this controversy arose, the respondent had filed a claim for homestead exemption on the home and three acres of land where his wife and children resided outside the corporate limits, and where within the last year or two he had purchased additional land adjacent thereto. One of the applications for homestead exemption, which was duly sworn to, contains the following provision: "This is the bona fide and only home of my family group, where we actually reside, and did on January 1, 1948." It is not contended that the other applications made during previous years were not of similar import. Moreover, there were witnesses who testified that they saw the respondent in a motor truck going to his home in the evening and returning in the morning, accompanied by his daughter who worked in the town, and one of the witnesses said that this was true "morning, noon and night." Therefore, the issue of whether or not the respondent resided within the corporate limits in a legal sense, as set forth in the instructions granted by the court, was submitted to a jury for determination, and with the result that a verdict was rendered in behalf of the relator on that issue.

The sole question argued in the brief of the appellant is his contention that the verdict of the jury was contrary to the overwhelming weight of the evidence. No assignment of errors has been filed in this Court, as required by Rule No. 6 of this Court, separate and apart from that contained in the body of the brief, but owing to the public interest involved in the question of whether or not one may hold office at a place separate and apart from the domicil provided by him as a home for his family under the facts and circumstances of this case, and because of the right asserted by the respondent

being a political one, we have considered the appeal on its merits, and we are unable to say that the verdict of the jury is against the overwhelming weight of the testimony, or that any of the other errors assigned would require a reversal of the case.

 The presumption is that the domicil of a married man is the place where his family resides; 17 Am. Jur., Domicil, Section 83, p. 639; although this presumption may be overcome by evidence showing the fact to be otherwise. This does not mean that a wife may select the domicil and thereby fix the place of residence of the husband where she and the children may reside, but the presumption above mentioned in the text is applicable when the husband selects the domicil, as in the instant case, where his wife and children reside as a home. Then, too, the burden of proving a change in domicil is upon the person who alleges it; 17 Am. Jur., Domicil, Sec. 86, p. 640.

Moreover, in a quo warranto proceeding to try title to a public office, where the State is relator, instead of another individual claimant of the office, the burden is on the respondent to prove his right or title to the office; 14 Am. Jur., Quo Warranto, Sec. 107, p. 168. Therefore, there was no error committed by the trial court in refusing an instruction which sought to place the burden of proof on the relator in the instant case.

 Ordinarily, "domicil" and "residence" are not synonymous or controvertible terms, as for instance in an attachment proceeding where the defendant may have a domicil in this State and at the same time be residing for an indefinite period of time in another state for regaining his health or some other like purpose, so as to be inaccessible for the personal service of process on him, and therefore a non-resident within the meaning of our attachment law. Alston v. Newcomer & Kausler, 42 Miss. 186. However, it seems to have been held in a number of other jurisdictions that "residence", for political

or voting purposes, means the place of the fixed present domicil; that the word "residence", used in election statutes and constitutional provisions relating to elections, means domicil; and that word "residence", as employed in election laws, is synonymous with "home", and means a fixed or permanent abode or habitation. Wagner v. Scurlock, 166 Md. 284, 170 A. 539, 542; State ex rel. Sathre v. Moodie, 65 N.D. 340, 258 N.W. 558, 565; Doyle v. Goldberg, 294 Mass. 105, 1 N.E. (2d) 1; Gluc v. Klein, 226 Mich. 175, 197 N.W. 691; State v. Savre, 129 Iowa 122, 105 N.W. 387, 3 L. R. A., N. S., 455, 113 Am. St. Rep. 452; State ex rel. Goldsworthy v Aldrich, 14 R. I. 171; and Sharp v. McIntire, 23 Colo. 99, 46 P. 115, 116: and in which latter case it is said: "[It] is synonymous with 'home' or 'domicil,' . . . and requires, not only a personal presence for the requisite time, but a concurrence therewith of an intention to make the place of inhabitancy the true home, . . . ".

▮▮ A definition of "residence", from which all the elements of home and habitation are excluded, as a matter of no consideration, is beyond the ordinary conception. Cf. Smith v. Deere, 195 Miss. 502, 16 So. (2d) 33.

In the instant case it must be conceded, in the light of all of the testimony, that the respondent did not ever intend to move his family into this house-trailer as a "home" for himself and family, since this would have been wholly impracticable, and there is no contention that he intended to do so, but merely that he intended to build a home in the Town of Taylorsville if he should ever become able to do so. In 17 Am.Jur. Sec. 25, p. 605, it is said that "The intention to make a home must be an unqualified one, not conditional on the happening of a future event". And assuming that "domicil" and "residence" are synonymous within the meaning of election laws as to holding office or voting, it is pertinent to note that in Section 18 of the above mentioned text it is said: "Inasmuch as one must also have a domicil some-

where and a domicil is not lost until a new one is acquired, a domicil once existing cannot be lost by mere abandonment even when coupled with the intention to acquire a new one, but continues until a new one is in fact gained.'' Whereas, in the instant case there has not even been an abandonment of the domicil established as a home for the respondent's wife and children.

Finally, under the proof of the instant case, the jury was warranted in believing that the respondent was sleeping in the house-trailer at night, where he had a bed, stove and cooking utensils, and prepared some of his meals, merely in order that he might continue to serve the town as its Marshal while maintaining his domicil outside of the corporate limits, rather than that he had abandoned his domicil where his wife and children resided as a permanent home.

We affirm with an opinion in the case for the reason that the precise question here involved was not presented in the case of McHenry v. State, 119 Miss. 289, 30 So. 763, or in any other previous decision of this Court, and for the further reason that this Court has not had an occasion heretofore ██ to align itself with the decisions in other jursidictions to the effect that in cases involving the right to hold office or to vote, the words ''domicil'' and ''residence'' are synonymous.

And notwithstanding that the proof discloses, according to the testimony of other town officials, the election commissioners, and a number of other witnesses, that the respondent was re-elected to the office in question and over two opponents, and has made a good officer, we find it necessary, for the reason hereinbefore stated, to uphold the verdict of the jury and affirm the judgment appealed from, whereby the respondent was declared to be exercising the functions of the office without lawful authority and removing him therefrom.

Affirmed.