# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-EC-00582-SCT

*KEVIN SHOWS AND PERRY COUNTY*
*REPUBLICAN EXECUTIVE COMMITTEE*

*v.*

*JOEL GARNER*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/2023 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | L. CLARK HICKS, JR. |
| | MALCOLM F. JONES |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | L. CLARK HICKS, JR. |
| | R. LANE DOSSETT |
| ATTORNEY FOR APPELLEE: | MALCOLM F. JONES |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 06/01/2023 |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     In January 2023, Joel Garner received a letter from the Perry County Election Commission, co-signed by the lone member of the Perry County Republican Executive Committee.  The letter notified him that he did not meet the two-year residency requirement to run in the upcoming Republican primary for Perry County Supervisor, District 2.  Garner petitioned for judicial review in the Perry County Circuit Court.   And this Court appointed a special trial judge, who tried the qualification question de novo.

¶2. After two days of evidentiary hearings, the circuit judge made thorough findings of fact and conclusions of law. First, the judge concluded, based on Mississippi's election statutes, that the county election commission lacked authority to step into the shoes of the Republican executive committee to disqualify Garner and keep his name off the Republican primary ballot. That task instead fell to the Perry County Republican Executive Committee, which failed to properly disqualify Garner. Second, the judge determined Garner is qualified to run because he changed his residence to District 2 in January 2021 when he moved into a trailer he leased next to his cattle farm.

¶3. The judge has ordered that Garner's name be placed on the primary election ballot. And Garner's opponent, District 2 Supervisor Kevin Shows, and the Perry County Republican Executive Committee (collectively, the Executive Committee) now appeal that decision. Because whether a candidate meets the two-year residency requirement is a question of fact, our review is limited to the deferential manifest-error standard. In other words, we do not review evidence anew to decide whether we believe Garner met the two-year residency requirement. We instead review the trial judge's finding for substantial evidence. And we cannot disturb the judge's finding if supported by substantial evidence.

¶4. Here, the judge supported his findings with testimony from multiple witnesses and other evidence that Garner had moved to the trailer back in January 2021 and has continually resided there. This evidence included the fact Garner had cancelled his homestead exemption on his previous home and that Garner had changed his voter registration to the trailer's address and ceased voting at his old precinct.

¶5.    On appeal, the Executive Committee does not really dispute this evidence. Rather, it challenges how the judge *interpreted* it. In its view, the evidence points to Garner not changing his residence until mid-2022, following county redistricting. While that is one possible way to view the evidence, it is not the only reasonable conclusion that can be drawn. And when "reasonable minds might differ on the conclusion" of a candidate's residency, "it is beyond this Court's power to disturb the findings of the circuit judge if supported by substantial evidence."[1] Because substantial evidence supports the trial judge's conclusion that Garner changed his residency in January 2021—more than two years before the District 2 Supervisor election—we must affirm the judgment directing that Garner's name be placed on the ballot for the Republican primary to be held August 8, 2023.

## Background Facts & Procedural History

### I.    Garner's Attempted Qualification for the Republican Primary

¶6.    To run for a county district office, a candidate must have lived in that district for two years immediately preceding election day. Miss. Code Ann. § 23-15-300(1) (Supp. 2022). So when a candidate seeks his political party's nomination for a county district office, the county executive committee of the respective party is tasked with reviewing whether the candidate meets the residency requirement. Miss. Code Ann. § 23-15-300(2) (Supp. 2022). The review must be "according to the procedures in [Mississippi Code] Section 23-15-299." Miss. Code Ann. § 23-15-300(2).

---

[1] ***Meredith v. Clarksdale Democratic Exec. Comm.***, 340 So. 3d 315, 326-27 (Miss. 2022) (quoting ***City of Vicksburg v. Williams***, 294 So. 3d 599, 601 (Miss. 2020)).

¶7. Under Section 23-15-299, the candidate must submit a fee and all necessary information to the proper executive committee. And upon receipt of this information, the executive committee "shall then determine . . . whether each candidate is a qualified elector of the state, state district, county or county district which they seek to serve, and whether each candidate meets all other qualifications to hold the office he or she is seeking . . . ." Miss. Code Ann. § 23-15-299(7)(a) (Supp. 2022).[2] If the proper executive committee finds that a candidate is not qualified, "then the executive committee shall notify the candidate and give the candidate an opportunity to be heard." Miss. Code Ann. § 23-15-299(7)(b) (Supp. 2022).[3] "If the candidate fails to appear at the hearing or to prove that he or she meets all qualifications to hold the office subject to no contingencies, then the name of that candidate shall not be placed upon the ballot." *Id.*

¶8. In this case, on January 3, 2023, Garner filed with the Executive Committee his qualifying papers to run as a Republican candidate for Supervisor, District 2, in Perry County, Mississippi, in the August 8, 2023 primary. But the Executive Committee did not

---

[2] Section 23-15-299(7)(a) also directs "[t]he proper executive committee . . . [to] determine whether the candidate has taken the steps necessary to qualify for more than one (1) office at the election" and "whether any candidate has been convicted (i) of any felony in a court of this state, (ii) on or after December 8, 1992, of any offense in another state which is a felony under the laws of this state, (iii) of any felony in a federal court on or after December 8, 1992, or (iv) of any offense that involved the misuse or abuse of his or her office or money coming into his or her hands by virtue of the office."

[3] Section 23-15-299(7)(b) requires "[t]he executive committee . . . [to] mail notice to the candidate at least three (3) business days before the hearing to the address provided by the candidate on the qualifying forms, and . . . [also to] attempt to contact the candidate by telephone, email and facsimile if the candidate provided this information on the forms."

4

follow the procedures of Section 23-15-299. Nor did it make a determination whether Garner met the residency requirement and thus was qualified to run.

¶9. Cathy Ball, the Chairman and sole member of the Executive Committee, testified that she instead delegated this duty to the Perry County Election Commission (Election Commission). Ball had assumed her role as chairman a month before qualifying opened. And she had been told that by agreement the Election Commission handled everything, including Republican candidate qualification. Election Commission Chairman Sherry Hartfield confirmed this.[4] On January 5, 2023, Hartfield and the Election Commission met with Garner about his candidacy. Ball, the sole member of the Executive Committee, was not present. At this meeting, Hartfield told Garner he did not meet the two-year residency requirement.[5] Hartfield conceded she made no investigation into Garner's assertion that he had lived in the trailer in District 2 for the last two years. Instead, she testified she based her decision on her knowledge that Garner's former residence was now in District 4.

---

[4] Hartfield testified that on January 17, 2023, the Executive Committee, the Election Commission, and the Circuit Clerk entered into an agreement that the Election Commission would handle all aspects of the Republican primary. This agreement is part of the record. And it shows that the agreement delegated to the Election Commission the statutory duties set forth in Mississippi Code Sections 23-15-239, -265, -266, -267, -333, -335, and -597 (Rev. 2018). Notably, the duty to ensure party primary candidates are qualified, set forth in Sections 23-15-299 and -300, was not included in this agreement.

[5] The next day, on January 6, 2023, Garner submitted a handwritten document to the Election Commission stating he would contest the January 5, 2023 decision to disqualify him. At the January 5, 2023 meeting, Garner had requested that his name be left on the ballot until he could be heard further. The Election Commission minutes from the meeting reflect that no actual determination that Garner was disqualified had been made at that meeting.

¶10. By letter dated January 30, 2023, the Election Commission informed Garner that, "[a]ccording to Miss. Code 23-15-300 Residency Requirements, you have been disqualified from running for the office of Supervisor District 2." Hartfield signed the letter on behalf of the Election Commission. And Ball also signed the letter on behalf of the Executive Committee. The letter made no mention of a hearing, as required by Section 23-15-299(7)(b). So on February 6, 2023, Garner through his counsel requested the Executive Committee give him a hearing. This request was denied on February 8, 2023.

## II. De Novo Hearing Regarding Garner's Qualifications

¶11. Eight days later, on February 16, 2023, Garner timely filed a petition for judicial review in Perry County Circuit Court. Mississippi Code Section 23-15-961(4) (Rev. 2018) permits "[a]ny party aggrieved by the action or inaction of the appropriate executive committee . . . [to] file a petition for judicial review to the circuit court of the county in which the executive committee whose decision is being reviewed sits." In compliance with Mississippi Code Section 23-15-961(5) (Rev. 2018), this Court appointed Judge Jeff Weill as special judge. Section 23-15-961(5) required a de novo hearing before the judge, who "shall determine whether the candidate whose qualifications have been challenged is legally qualified to have his name placed upon the ballot in question."

¶12. Judge Weill heard Garner's petition over two days, in which he listened to witness testimony and received documentary evidence.

### A. Evidence that Supported Garner's Petition

6

¶13.   Garner testified that since 2017 he has leased three hundred acres on Buck Creek Loop Road to maintain a cattle herd.  The property owner has a trailer at 51 Buck Creek Loop Road in Perry County.  This address is in Supervisor District 2.  The owner's grandson lived in the trailer until September 2020.  After the grandson moved out, Garner approached the owner about leasing the trailer, so Garner could be closer to his cattle.  The owner and Garner entered a lease agreement on November 1, 2020.[6]  Garner began moving furniture into the trailer in December 2020.  In mid-January 2021, Garner began living in the trailer. Garner testified from that time he regularly lived, ate, and slept at the trailer.  He receives his personal mail at that address.  He presented photos to the trial judge demonstrating that he lived there full time.

¶14.   Garner testified that, before January 2021, Garner lived with his family at 62 Phillips Nursery Road in Richton, Mississippi.  The Phillips Nursery Road home was also in District 2 until May 2022.[7]  That is when the Perry County Board of Supervisors adopted a redistricting ordinance.  As a result of that ordinance, the Phillips Nursery Road home was redistricted to District 4.

¶15.   While Garner is still married and regularly visits his wife and teenage son, Garner testified that he left his Phillips Nursery address in January 2021 with no intention of returning indefinitely.  Garner works as a maintenance supervisor for the Perry County

---

[6] In the initial agreement, Garner's monthly rent payment included utilities, which initially remained in the owner's name.  Garner testified he and his wife transferred the utilities to their names in 2022 because his elderly landlord had trouble making the payments.  The utility bills in the Garners' names were admitted into evidence.

[7] In 2019, Garner ran for District 2 Supervisor, losing to Kevin Shows.

7

School District. But he also owns a residential heating, cooling, and plumbing business that is still based out of the Phillips Nursery Road home. That is where Garner stores his business vehicles and equipment. Garner testified his weekday routine is to wake at 4:00 a.m., tend to his cattle, then go to his school district job. After work and on weekends, he works at his air conditioning and plumbing business.

¶16. Garner's wife, Christy Garner, testified that her husband moved to the Buck Creek Loop Road trailer in mid-January 2021. She testified he has lived there since. While the two are happily married, Christy testified they have a high-school-age son who did not want to change homes. So Christy mainly stayed at the Phillips Nursery Road home with their son.[8]

¶17. In 2011, Garner and Christy had filed for homestead exemption on the Phillips Nursery Road home. This exemption automatically renewed each year, including at the very beginning of 2021. But after he moved into the Buck Creek Loop Road trailer in mid-January 2021, Garner said he was told he would have to cancel his homestead exemption. So Garner cancelled his homestead exemption for the 2022 tax year. And the Garners paid almost double the property taxes on the Phillips Nursery Road home that they had paid the previous year.

---

[8] Christy further testified she and Garner go to church together on Wednesday evenings and Sunday mornings, with Garner occasionally staying with her on Wednesday nights. While Garner kept a few clothes at the Phillips Nursery Road home, the clothes he regularly wore were all kept at the trailer. Christy said she did not cook much for Garner at her home. Instead, they mainly ate out for dinner.

¶18. In June 2022, Garner filed a change of voter registration to his Buck Creek Loop Road address. Garner testified—and the voter profile generated by the Perry County Circuit Clerk's office verified—Garner had last voted in November 2020 in the presidential election. But beginning in November 2022, Garner voted in the precinct of his Buck Creek Loop Road address. And there was no proof he voted in his old precinct after he moved into the trailer.[9]

¶19. Garner also presented testimony from friends and neighbors. His long-time friend and coworker, Chris Cooley, testified that he had helped Garner rewire the trailer in early January 2021. He did this so Garner could move into it. And since Garner moved in, Cooley testified he regularly visited Garner at the trailer. Cooley observed that the trailer showed all signs that Garner was living there full time. Garner's nearest neighbors, the Sheets, who lived just down Buck Creek Loop Road, corroborated that the former occupant of 51 Buck Creek Loop Road moved out in September 2020. They also testified that, beginning in January 2021, they regularly saw Garner or his pickup truck at the trailer. The Sheets had similar schedules to Garner. And they saw him leave in the morning and come home in the evening. They also saw him working his cattle on the adjacent land he leased. They said they would often visit with Garner if they saw him on his porch or walking to his mailbox. A seasonal worker on Garner's cattle farm also testified that, beginning in January 2021, he met Garner at the Buck

---

[9] Garner had last renewed his driver's license in 2019 while still living on Phillips Nursery Road. So before voting in the November 2022 election, he changed his driver's license address to match his voter registration address. Also, when his firearms permit needed to be renewed in early 2023, he changed his address to his Buck Creek Loop Road address.

Creek Loop Road trailer to pick up his paycheck. And during this time, he never met Garner at the Phillips Nursery Road home.

### B.    Executive Committee's Evidence

¶20.    In response, the Executive Committee presented the testimony of Perry County Board of Supervisors President Tim Wise. Wise testified that Garner had attended the May 2022 board meeting when the board voted to redistrict and that Garner had objected to a lack of a public hearing on the matter. According to Wise, Garner stated at the meeting that he (Garner) was "going to have to move to the 51 Buck Creek Loop address." But Garner denied saying this, asserting Wise misunderstood what he had said. The respondents produced no other witness to corroborate what Garner said at the meeting.[10]

¶21.    The Executive Committee also introduced a letter written by Garner challenging the order of redistricting. This letter was printed as a paid advertisement in the *Richton Dispatch* in June 2022. According to the Executive Committee, this letter proved Garner had only recently moved to Buck Creek Loop Road. The Executive Committee pointed to two sentences in particular. One said, "I have established my new permanent residence on my

---

[10] The Executive Committee's other witnesses included various county employees, including a rural garbage truck driver, a road foreman, and a sheriff's deputy. All three testified they had not seen Garner at the Buck Creek Loop Road address. But when pressed, the garbage truck driver admitted that many rural residents hauled their own trash to avoid attracting animals, so Garner's not using county garbage services was not unusual. The garbage truck driver also admitted his route took him down Buck Creek Loop Road after 8:00 a.m., when Garner would have already been at work. Similarly, the road foreman admitted he would not have seen Garner on Buck Creek Loop Road if Garner left early for work. Finally, the sheriff's deputy conceded that Garner had never been a person of interest in any investigation, so the deputy would have no reason to notice if Garner actually lived on Buck Creek Loop Road.

property at 51 Buck Creek Loop Road." And the other said, "this Board is attempting to cut me and my family out of District Two where I have lived for 46 years." Garner countered that the newspaper had misquoted his original advertisement, which he did not write personally. But Garner did admit to paying for and approving the ad. The Executive Committee also submitted a *Richton Dispatch* article about the redistricting, in which Garner was quoted as saying, "I am being moved out of Dist. 2 purely for political reasons." At the hearing, Garner strenuously disputed the newspaper's account about what he said.

### III.     The Trial Judge's Conclusions

¶22.    Following the hearing, the trial judge entered a thirty-page findings of fact and conclusions of law. After thoroughly discussing the facts, most of which were undisputed, the judge reached three conclusions concerning Garner's petition. First, the judge ruled that the Election Commission had no authority to determine Garner was not qualified to run in the Republican primary. Second, the judge ruled that the Executive Committee never properly disqualified Garner as a candidate. But even assuming the Executive Committee did disqualify Garner by virtue of Ball co-signing the Election Commission's January 30, 2023 letter, the judge ruled such action was arbitrary and capricious and violated both Mississippi's election statutes and Garner's rights to due process. Third, and alternatively, the judge ruled that Garner is currently and has been for at least two years before the election a resident of 51 Buck Creek Loop Road. Thus, the judge deemed Garner qualified to run in the Republican primary for District 2 Supervisor.[11]

---

[11] The judge also denied the Executive Committee's motion to dismiss, finding Garner's petition timely and otherwise procedurally sound. The Executive Committee does

¶23.   The trial judge based his last finding on evidence that Garner intended to make the Buck Creek Loop Road trailer his residence beginning in January 2021.  The judge was persuaded by Garner's affirmative steps to cancel his homestead exemption on the Phillips Nursery Road home and to change his voter registration.[12]  But the most telling to the trial judge was the proof of Garner's actual living arrangements, which was shown by witness testimony and photographs.  In the judge's view, this evidence—along with Garner's declarations of his intent to change residences in January 2021—was sufficient to prove Garner abandoned the Phillips Nursery Road house in January 2021 and took up residence at Buck Creek Loop Road.

¶24.   The judge entered a final judgment incorporating his findings of fact and conclusions of law.  This judgment granted Garner's petition and ordered the election officials of Perry County "to place the name of Petitioner Joel Garner upon the ballot for the Republican Primary to be held on August 8, 2023[.]"

### Issues on Appeal

¶25.   The Executive Committee filed a timely notice of appeal, a $300 cost bond, and a bill of exceptions, in compliance with Mississippi Code Section 23-15-961(6) (Rev. 2018).[13]

---

not appeal the denial of this motion.

[12] While Garner continued to register his vehicles at Phillips Nursery Road, the judge did not find this detail changed his residency.  These vehicles were used for his air conditioning and plumbing business and were kept at that location.

[13] Garner responded with a motion to dismiss and strike the bill of exceptions. Alternatively, Garner moved for an expedited appeal.  Garner immediately amended his motion, seeking the same relief.  Two days later, Garner filed another motion to docket and dismiss the appeal for lack of appellate jurisdiction.  We deny Garner's motion and amended

In the bill of exceptions, the Executive Committee asserts the trial judge made two errors. First, it argues the trial judge erred by ruling that Garner's name should be placed on the ballot because he was not given a hearing. Second, the Executive Committee asserts the special trial judge's findings of fact were manifestly wrong and against the weight of evidence.

### Standard of Review

¶26. "We review challenges to a candidate's residency for manifest error because a candidate's residency 'clearly involves questions of fact.'" *Meredith*, 340 So. 3d at 321 (quoting *McQuirter v. Archie*, 311 So. 3d 1147, 1152 (Miss. 2020)). "A circuit court judge sitting as the trier of fact is given the same deference with regard to his fact finding as a chancellor, and his findings are safe on appeal when they are supported by substantial, credible, and reliable evidence." *Id.* (quoting *City of Vicksburg v. Williams*, 294 So. 3d 599, 601 (Miss. 2020)).

### Discussion

### I. The Executive Committee failed to properly disqualify Garner.

¶27. The Executive Committee first asserts the judge erred by ruling that Garner's name should be placed on the ballot because he was not given a hearing. The Executive

---

motion to dismiss this appeal and strike the bill of exceptions. We also deny his motion to docket and dismiss. Finally, we dismiss as moot his motion and amended motion to expedite this appeal. Based on the directive of Mississippi Code Section 23-15-961(6), we ordered an expedited briefing schedule. Further, we are rendering a final decision in time for Garner's name to be placed on the Republican primary ballot.

The Executive Committee filed a motion to strike Garner's appellee's brief. That motion is also denied.

Committee essentially takes a "no harm, no foul" approach. Because the circuit judge ultimately gave Garner a de novo hearing, the Executive Committee asserts Garner's due process rights to notice and an opportunity to be heard on the residency issue were ultimately satisfied.

¶28. This argument, however, completely misses the judge's actual ruling. The judge did not merely conclude that the Executive Committee violated Garner's due process rights by not providing Garner the opportunity to be heard before removing his name from the ballot. And the judge did not place Garner's name on the ballot simply because he was denied a hearing. The judge concluded that the Executive Committee failed to properly disqualify Garner *at all.* Its refusal to provide Garner a hearing was just one of several violations of election statutes, the most egregious being its punting to the Election Commission the decision to disqualify Garner.

¶29. We agree with the trial judge that the Election Commission clearly lacked the statutory authority to disqualify Garner from running in the Republican primary election. While election commissions are tasked with determining if independent and special election candidates are qualified,[14] when a candidate seeks nomination in a political party election, as in this case, it is the "*the proper executive committee . . .* [that] shall then determine . . . whether each candidate is a qualified elector of the state, state district, county or county district which they seek to serve . . . ." Miss. Code. Ann. § 23-15-299(7)(b) (emphasis added). Section 23-15-300—the very statute that requires a candidate that seeks to represent

---

[14] Miss. Code Ann. § 23-15-359 (Supp. 2022).

a county district be a resident of that county district for two years immediately preceding the election—reinforces this distinction that executive committees—and not election commissions—shall review the qualifications of those wishing to run in party primaries.[15] Miss. Code Ann. § 23-15-300(2).

¶30.    Further, the executive committee's mandatory duty to review and determine if party candidates meet the residency requirement is nondelegable.  Elsewhere in the election statutes, the Legislature expressly authorizes party executive committees to delegate to election commissions specific statutory duties related to primary elections.  *E.g.*, Miss. Code Ann. §§ 23-15-239(2)(a), -265(2)(a), -267(4)(a), -333(4)(a), -335(2)(a), -597(2)(a) (Rev. 2018); *see also* Miss. Code Ann. § 23-15-263 (Rev. 2018). But in Section 23-15-299, the Legislature makes no such express provision for delegation.[16]  And for good reason.  As the

---

[15] Section 23-15-300(2) directs that "[t]he appropriate election commission shall review and determine whether a candidate required to file qualifying information with it meets the applicable residency requirement according to the procedures in Section 23-15-359"—i.e., the procedures for qualifying as an independent candidate or candidate in a special election.  Miss. Code Ann. § 23-15-300(2).  But "[t]he appropriate election official or *executive committee*, whichever is applicable, with whom a candidate files qualifying information *shall review* and determine whether the candidate meets the applicable residency requirement according to the procedures in Section 23-15-299"—i.e., the procedures that govern qualifying as a candidate for a political party nomination.  Miss. Code Ann. § 23-15-300(2) (emphasis added).

[16] As the Legislature requires, "[*u*]*nless otherwise provided in this chapter*, the county executive committee at a primary election *shall perform all duties* that relate to the qualification of candidates for primary elections, print ballots for primary elections, appoint the primary election officers, resolve contests in  regard to primary elections, and perform all other duties required by law to be performed by the county executive committee."  Miss. Code Ann. § 23-15-263 (Rev. 2018) (emphasis added).  In other words, if the Title 23, Chapter 15, of the Mississippi Code does not *expressly* provide for the executive committee to delegate its duty to qualify primary candidates, then this duty is nondelegable.

trial judge noted, if there is a later contest of the primary election, it is the county election commission that must sit as a special tribunal and advisor to the special judge. Miss. Code Ann. § 23-15-931 (Rev. 2018). And in the event of such contest, if three election commissioners attend the election hearing and concur with the judge's findings of fact, then such findings are not reviewable on appeal. *Id*. We agree with the special trial judge that it would be improper for an election commission to sit as an advisor in an election contest by a party-nominated candidate that the commission had already previously attempted to disqualify from running for that nomination.

¶31. In other words, the problem with Garner's disqualification was not merely that it was not preceded by a hearing in which Garner was given an opportunity to prove his District 2 residency. The problem is that the disqualification was made by a body that lacked authority to do so.[17]

¶32. But even if the January 30, 2023 letter co-signed by Ball could be construed as an Executive Committee determination that Garner was not qualified to run in District 2, the statutory requirements for what the Executive Committee had to do to keep his name off the ballot clearly were not satisfied. Section 23-15-299(7)(b) required the Executive Committee give Garner notice of a hearing in which Garner would have the opportunity to prove he met the two-year residency requirement. And only if "the candidate fails to appear at the hearing

_____

[17] We note that the Election Commission's decision to take on primary candidate qualification not only exceeded statutory authority. It also exceeded the scope of the written agreement among the Election Commission, Executive Committee, and Circuit Clerk. The agreement covered only those statutory duties that are expressly delegable. *See supra* n.4.

16

or to prove that he or she meets all qualifications to hold the office subject to no contingencies, *then* the name of that candidate shall not be placed upon the ballot." *Id.*

¶33.	While Garner ultimately was provided a hearing before *the circuit court*, this later judicial review does not alter the fact that the statutory steps to keep Garner's name off the ballot were not followed. This Court is not without sympathy for Ball, the lone appointee to the Executive Committee, whose tenure began just a month before Garner filed his qualifying papers and who was told by the Election Commission that it also handled qualifying Republican primary candidates. But this Court cannot ignore the procedural errors that support the judge's conclusion that, as a matter of law, Garner was never properly disqualified by the Executive Committee.

¶34.	Thus, we find the trial judge did not err in his first two conclusions of law—that the Election Commission lacked the statutory authority to disqualify a party primary candidate and that the Executive Committee never properly disqualified Garner. That said, we need not address the Executive Committee's argument that these procedural failures also did not entitle Garner's name to be placed on the ballot. The trial judge alternatively addressed the merits of Garner's petition. And the judge found that the evidence supported Garner's meeting the two-year residency requirement to run for the party nomination for a District 2 office. As we discuss next, because the judge supported his merits-based ruling with substantial evidence, our deferential standard requires that we must affirm on that ground.

II.	**The judge supported his conclusion that Garner met the two-year residency requirement with substantial evidence.**

17

¶35. The Executive Committee asserts the trial judge's substantive finding that Garner met the two-year residency requirement was manifestly wrong and against the weight of the evidence. The crux of the Executive Committee's argument is that the evidence instead points to Garner's not changing his residency until after the May 2022 order of redistricting, which is less than two years before the 2023 election.

¶36. In addressing the Executive Committee's claim, we must keep in the forefront our manifest-error standard of review. As we recently pointed out, in cases in which "reasonable minds might differ on the conclusion" of whether a candidate is actually a resident of the district where he seeks to run, "it is beyond this Court's power to disturb the findings of the circuit judge if supported by substantial evidence." *Meredith*, 340 So. 3d at 326-27 (quoting *Williams*, 294 So. 3d at 601). In other words, this Court is not tasked with determining when in fact Garner changed his residency. Rather, our job is to determine if the judge's conclusion that Garner has resided on Buck Creek Loop Road since mid-January 2021 is supported by substantial evidence.

¶37. Section 23-15-300(1) requires that a "candidate for any municipal, county or county district office shall be a resident of the municipality, county, county district or other territory that he or she seeks to represent in such office for two (2) years immediately preceding the day of election." For election purposes, "residency and domicile are synonymous." *Hale v. State Dem. Exec. Comm.*, 168 So. 3d 946, 951 (Miss. 2015) (citing *Hubbard v. McKey*, 193 So. 2d 129, 132 (Miss. 1966); *Jones v. State ex rel. McFarland*, 207 Miss. 208, 42 So. 2d 123, 125 (1949)). The prerequisites of domicile are "(1) an actual residence voluntarily

18

established in said county [district], (2) with the bona fide intention of remaining there, if not permanently, at least indefinitely." ***Stubbs v. Stubbs***, 211 So. 2d 821, 824 (Miss. 1968) (quoting ***Smith v. Smith***, 194 Miss. 431, 434, 12 So. 2d 428, 429 (1943)).

¶38.    "The foundation of domicile is intent." ***Id.*** at 825.  This Court has held that "intention may be established by physical presence, declaration of intent, and all relevant facts and circumstances, and in this connection it has been held that the declarations of the party himself are most important." ***Id.***  Further, it has long been the law in Mississippi that, "even where a party has two residences at different seasons of the year, that will be esteemed his domicil[e] which he himself selects, or describes, or deems to be his home, or which appears to be the centre of his affairs, or where he votes or exercises the rights and duties of a citizen." ***Hairston v. Hairston***, 27 Miss. 704, 719 (1854).

¶39.    In this case, Garner testified under oath that he not only moved into the trailer on Buck Creek Loop Road in mid-January 2021 but also intended for the trailer to be his residence indefinitely.  Garner presented multiple witnesses that confirmed Garner had been living in the trailer since that time.  And the Executive Committee presented no evidence to rebut this testimony.

¶40.    Instead, the Executive Committee points to the timing of when Garner cancelled his homestead exemption and changed his voter registration.  It argues this is evidence that Garner did not intend to change his residency to Buck Creek Loop Road until after the May 2022 redistricting.  As support of its theory, the Executive Committee points to Wise's testimony and the *Richton Dispatch* advertisement and article about restricting.

¶41. The judge was aware of the Executive Committee's argument. But in the judge's view, Garner's actions in 2022 were consistent with and further proof of Garner's January 2021 change of residency.

¶42. While Garner did not cancel the homestead exemption for the Phillips Nursery home until mid-2022, as the judge pointed out, the exemption automatically renewed on January 1, 2021, weeks before Garner moved into the trailer. And "[o]ur statutory scheme for homestead exemptions does not require the resident to file a new application unless there has been an alteration in 'the property description, ownership, use or occupancy since January 1 of *the preceding year*.'" ***Hale***, 168 So. 3d at 952 (emphasis added) (quoting Miss. Code Ann. § 27-33-31 (Rev. 2013)). In other words, because Garner did not move out of the Phillips Nursery Road home until after January 1, 2021, he was not required to change his homestead status until the 2022 tax year. In the judge's view, the fact Garner did cancel his homestead exemption and thus paid double the property taxes on the Phillips Nursery Road home for the 2022 tax year supported the fact Garner had changed his residence the year before. And we cannot say the judge's conclusion was manifestly wrong. In ***Hale***, we observed that, while "canceling one's homestead exemption does not give rise to a rebuttable presumption regarding his or her domicile, it can provide relevant circumstantial evidence of a person's intention to establish a new domicile, which should be considered along with the other relevant facts and circumstances of the case." ***Id.***

¶43. The same is true for the judge's conclusion about Garner's changing his voter registration—that it supported Garner's change of residency in January 2021. While Garner

20

did not move his voter registration until mid-2022, Garner also did not vote in his previous precinct after the November 2020 elections. This distinguishes his case from this Court's recent decision in *Gunasekara v. Barton*, No. 2023-EC-00377-SCT, 2023 WL 3365567 (Miss. May 11, 2023) (mandate issued May 11, 2023). In that case, the executive committee that disqualified Gunasekara presented evidence that she had voted in a local election in Washington, D.C., *after* the date in which she would have had to change her residency to Mississippi to run for election here. *Id.* at *9. And this Court found no manifest error in the trial court's concluding that "the exercise of her right to vote was a clear expression of her declaration of citizenship" in Washington, D.C. *Id.* But here, after the November 2020 election, Garner made no such declaration. Instead, this case is like *Hale*, in which "no evidence was presented that Stone had chosen to exercise his right to vote in Benton County after he began renting a house in Marshall County." *Gunasekara*, 2023 WL 3365567, at *9 (citing *Hale*, 168 So. 3d at 949). Before the November 2022 election—the next election in which he exercised his right to vote—he updated his voter registration to his Buck Creek Loop Road address. And he voted in that precinct. As with the homestead exemption, we cannot say that the judge was manifestly wrong for concluding that Garner's change in voter registration was evidence in support of, not against, his change in residency in January 2021.

¶44. Finally, the Executive Committee points to Tim Wise's testimony about what Garner said at a May 2022 supervisors meeting and the ensuing advertisement and article in the *Richton Dispatch* as evidence that manifestly weighs against the judge's conclusion. But in reviewing the judge's findings of fact, it is evident that the judge did not assess as much

21

weight and credibility to this evidence. Wise's testimony was not corroborated. And Garner testified that the article and advertisement were inaccurate. As the person sitting as fact-finder, it was the circuit judge who solely determined what weight and credibility to assign the Executive Committee's evidence. *See Coulter v. Dunn*, 312 So. 3d 713, 718 n.4 (Miss. 2021) (noting that is not the appellate court's role to reweigh evidence or resolve conflicts in evidence); *City of Jackson v. Lipsey*, 834 So. 2d 687, 691 (Miss. 2003) (recognizing "that the trial judge, sitting in a bench trial as the trier of fact, has the sole authority for determining the credibility of the witnesses."). As we have noted, under the manifest-error standard of review, "we only ask if there is sufficient evidence to support a holding, not if testimony is unanimous on a given point." *Coulter*, 312 So. 3d at 718 n.4 (citing *G.Q.A. v. Harrison Cnty. Dep't of Hum. Res.*, 771 So. 2d 331, 335 (Miss. 2000)).

¶45. In the end, the circuit judge was obviously persuaded by Garner's testimony that he intended to and did in fact change his residency in January 2021. Garner's testimony was corroborated by his wife, friends, and neighbors. And his testimony was further corroborated by photos, the cancellation of the homestead exemption on the Phillips Nursery Road home, his change in voter registration, and other evidence. Because the judge supported with substantial evidence his conclusion that Garner met the two-year residency requirement, our standard of review requires we not disturb it.

**Conclusion**

¶46. We affirm the judgment of the Perry County Circuit Court, which ordered Joel Garner's name to be placed on the ballot as a candidate for the Republican nomination for

Perry County Supervisor, District 2. We also find, in light of impending ballot deadlines for the August 8, 2023 primary election, it is necessary that our decision be final. Thus, under Mississippi Rule of Appellate Procedure 2(c), we find that no motion for rehearing will be allowed and that this opinion shall be deemed final in all respects. The Court finds that the mandate in this matter shall issue immediately.

¶47. The Clerk of this Court is directed to send copies of this opinion to the Perry County Republican Executive Committee and to the Secretary of State.

¶48. **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., AND BEAM, J., NOT PARTICIPATING.**